CRUZ TULIER OLIVERA, demandante y apelado, *v.* AUTORIDAD DE TIERRAS DE PUERTO RICO, demandada y apelante.

Núm. 9801.—*Sometido:* Mayo 2, 1949. *Resuelto:* Julio 13, 1949.

*Ramón Gandía Bizcombe* y *Antonio Riera,* abogados de la apelante; *F. Fernández Cuyar,* abogado del apelado; *Ramón A. Cancio,* abogado del Comisionado del Trabajo y como *amicus curiae* este último.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

De nuevo otra instrumentalidad gubernamental de El Pueblo de Puerto Rico, la demandada apelante, Autoridad de Tierras de Puerto Rico, nos pide que resolvamos[1] que ella está exenta de dar cumplimiento a la Ley de Salario Mínimo[2] y a la de ocho horas de trabajo,[3] ya que, de acuerdo con la ley de su creación[4] ella no es una entidad dedicada al comercio, industria, agricultura o cualquier otro negocio lucrativo y además que, en todo caso, el demandante en este caso, como "listero" que fué de la demandada, era su representante o agente, y como tal, cae dentro de la definición de "patrono" que contiene la sección 30 de la Ley de Salario Mínimo, según quedó enmendada por la Ley núm. 217 de 11 de mayo de 1945 (pág. 681).[5]

[1] En el caso de *Lebrón* v. *Servicio de Acueductos,* 68 D.P.R. 1, fué el Servicio Insular de Acueductos y Alcantarillados de Puerto Rico.

[2] Ley núm. 8 de 5 de abril de 1941 ((1) pág. 303).

[3] Ley núm. 49 de 7 de agosto de 1935, Segunda Sesión Extraordinaria (pág. 539).

[4] Ley núm. 26 de 12 de abril de 1941 ((1) pág. 389).

[5] Esta sección, en lo pertinente, dispone:

"Sección 30.—En esta Ley, a menos que de su texto se deduzca otra cosa, se aceptarán las siguientes definiciones de palabras y frases que en ella se usan:

" * * * * * * *

El Comisionado del Trabajo de Puerto Rico solicitó permiso, que le fué concedido, para intervenir ante esta Corte como *amicus curiae* para sostener la validez de aquella parte de la sentencia que condenó a la Autoridad de Tierras a pagar al demandante una penalidad igual a la suma concedídale por salarios no satisfechos, bajo la sección 25 de la Ley de Salario Mínimo, según quedó enmendada por la Ley núm. 451 de 14 de mayo de 1947 ((1) pág. 951).([6])

En la demanda sobre reclamación de salarios, se alegó y fué aceptado en la contestación que el demandante "fué empleado por la demandada en calidad de listero en la finca 'Mucarabones', propiedad de y operada por la demandada, que es una de las fincas denominadas de beneficios proporcionales, sita en el barrio Mucarabones del Municipio de Toa Alta, Puerto Rico."

Alegó además el demandante haber trabajado, en adición a las ocho horas de trabajo diarias, horas extraordinarias que no le fueron satisfechas desde el mes de julio de 1944 al mes de abril de 1947, y tampoco los días de descanso y

---

"'Patrono' incluye toda persona natural o jurídica de cualquier índole que, con ánimo de lucro o sin él, emplee o permita trabajar cualquier número de obreros, trabajadores o empleados mediante cualquier clase de compensación; e incluye al jefe, funcionario, gerente, oficial, gestor, administrador, superintendente, capataz, mayordomo, agente o representante de dicha persona natural o jurídica.

"'* * * * * * *

"'Obrero', 'empleado' o 'trabajador' incluye toda persona natural que ejerza, desempeñe o realice cualquier arte, oficio, empleo o labor bajo las órdenes o para beneficio de otro, o a base de contrato de arrendamiento de servicios, o mediante remuneración de alguna clase o promesa expresa o tácita de recibirla, en cualquier industria, negocio u ocupación."

([6])Esta sección, en su primer párrafo, dispone:

"Sección 25.—Todo obrero o empleado que por su trabajo reciba compensación distinta o inferior a la prescrita para cualquier industria, negocio u ocupación de acuerdo con esta Ley o cualquier decreto, reglamento, resolución u orden de la Junta, tendrá derecho a cobrar mediante acción civil la diferencia adeudada hasta cubrir el importe total de la compensación que le corresponda, más una cantidad igual a la que se le haya dejado de satisfacer, por concepto de penalidad adicional, además de las costas, gastos y honorarios de abogado del procedimiento, estos últimos en suma razonable que nunca bajará de cincuenta (50) dólares, sin que para nada de ello obste pacto en contrario."

vacaciones a que tenía derecho. La corte inferior consideró probados, entre otros, los siguientes hechos:

"1. Que el querellante en este caso trabajó para la Autoridad de Tierras de Puerto Rico desde el viernes 8 de septiembre de 1944 hasta el jueves 15 de mayo de 1947. (*Exhibit b* de la demandada, relación de pagos certificada por el Auditor de Puerto Rico.)

"2. Que durante dicho período de tiempo el querellante en este caso devengó los siguientes sueldos: desde el 8 de septiembre de 1944 hasta el 29 de marzo de 1945, $19 semanales; desde el 30 de marzo de 1945 hasta el 23 de enero de 1947, $20.61 semanales; desde el 23 de enero de 1947 hasta el 15 de mayo de 1947, $22.50. (Exhibit *b* de la demandada, relación de pagos certificada por el Auditor de Puerto Rico.)

"3. Que la semana de trabajo del querellante consistía de seis días a la semana, pues aunque pudo haber trabajado algún domingo durante la zafra el mismo está compensado sobradamente por la reducción de tarea durante el tiempo muerto.

"4. Que la tarea del querellante consistía en hacer los *tickets* para las jaulas de los distintos vagones, los sobres de pago, el informe de materiales y la nómina semanal para el pago de obreros.

"5. Que la tarea descrita por la prueba de ambas partes justifica un trabajo extra diario de 2 horas durante cinco días de la semana y de 4 horas extras durante el día jueves de cada semana.".

Como conclusiones de derecho la corte hizo constar que tanto la Ley de Salario Mínimo como el Decreto Mandatorio núm. 3 de la Junta de Salario Mínimo que se refiere a la industria azucarera eran aplicables a la Autoridad de Tierras.

Y, computando el número de horas extras trabajadas a razón del tipo de salario correspondiente, condenó a la demandada a pagar al demandante $1,671.70, más otra cantidad igual de $1,671.70 por la penalidad establecida por la sección 25 de la Ley núm. 8 de 5 de abril de 1941, según quedó enmendada por la núm. 451 de 14 de mayo de 1947, y $200 en concepto de honorarios de abogado.

 No erró a nuestro juicio la corte sentenciadora al resolver que el demandante, como "listero" de la deman-

dada, no era su agente o representante, y como tal, estar comprendido dentro de la definición de patrono que contiene la sección 30, supra, ya que, como resolvimos en el caso de *Chabrán* v. *Bull Insular Line,* 69 D.P.R. 269, 275, al interpretar el alcance de la sección 4 de la Ley núm. 49 de 1935, que contiene una definición similar de la palabra patrono, el representante o agente a que se refieren estos estatutos, "no es un empleado que desempeña labor manual u oficinesca rutinaria. Más bien es un individuo que actúa y habla por el patrono sobre cuestiones que requieren el uso de discreción. Por ejemplo, un empleado que tiene otros empleados trabajando bajo sus órdenes y a quienes puede contratar y despedir, probablemente caería en esta categoría."

La labor encomendada al demandante, según demostró la prueba, consistía en preparar: (1) las nóminas de pago de los trabajadores de la finca Mucarabones, (2) los informes de materiales usados, (3) los *tickets* para las distintas jaulas de los vagones de caña, y, para preparar las nóminas tenía que voltear la finca dos veces al día para comprobar el número de obreros que estaban trabajando. El hecho de que, incidentalmente, si faltaba un obrero en determinado sitio, él pudiera mandar otro, según declaró un testigo de la demandada, no implica que él tenía la facultad de contratar y despedir empleados a nombre de la demandada. De hecho ninguna persona trabajaba bajo sus órdenes ni podía él disponer la forma en que los obreros tenían que realizar sus labores. Y aun asumiendo, sin resolverlo, que en aquel caso incidental fuera un representante del patrono, ese hecho aislado no le quitaba al demandante su carácter de empleado bajo la definición de la sección 30, supra, y como tal, con derecho a los beneficios de la Ley de Salario Mínimo. Aun cuando en el caso de *Chabrán* v. *Bull Insular Line,* supra, tratamos y resolvimos esta cuestión, en vista de que una instrumentalidad del gobierno como la apelante cita dicho caso como autoridad para sostener su contención, creemos conveniente

citar algunas autoridades adicionales que concuerdan con dicha decisión, la cual, desde luego, no es favorable a la apelante.

En el caso de *American Steel Foundries* v. *National Labor Rel. Bd.*, 158 F.2d 896, 898 (C.C.A. 7, 1946), se trataba de dos empleados: un capataz (*foreman*) y un "*chief departmental clerk in timekeeping department*"—aparentemente este último cargo tiene bastante similitud con el de un "listero"—los cuales la compañía sostenía debían considerarse incluídos en la definición de patrono que contiene la sección 2 de la Ley Nacional de Relaciones del Trabajo (29 U.S.C.A. 152), al efecto de que: "El término 'patrono' incluye cualquier persona que actúe, directa o indirectamente, en el interés de un patrono." La corte, citando además la definición de la palabra "empleado" incluída en dicha sección al efecto de que "El término 'empleado' incluirá cualquier empleado, y no estará limitado a los empleados de un patrono en particular", resolvió que toda persona empleada por la peticionaria "actúa en el interés del patrono. La actuación del empleado más inferior, si realizada en el curso de su empleo, puede obligar al patrono. Creemos que el estatuto significaba que sólo el personal que actuara en el interés del patrono en materias incluídas en la ley podrán considerarse en el *status* patronal. Cuandoquiera que un trabajador 'supervisor' (*supervisory worker*), de alta o baja categoría en la jerarquía administrativa, actúa en interés del patrono, esto es, lleva a efecto la conocida política del patrono en relación con las actividades organizadoras de los trabajadores, como por ejemplo en oposición a la unionización en general o a favor de una unión de la compañía, tal trabajador 'supervisor' *puede* adquirir la semejanza de su patrono. [Citas] Tal conducta del obrero 'supervisor' no significa que ha perdido su status como empleado. Significa solamente que las consecuencias de sus actos *pueden* ser atribuídas a su patrono y que en ese sentido nada más es que dicho trabajador ocupa el status de patrono. . . ." (Comillas simples nuestras.)

Esta fué la misma conclusión a que llegamos en el caso de *Chabrán,* supra, págs. 272-74, y escolio 1, en el cual llamamos la atención hacia el hecho de que bajo la Ley de Relaciones del Trabajo de Puerto Rico, al definirse el término "empleado" expresamente se excluyó a los "ejecutivos o supervisores", pero no se hizo tal exclusión en la Ley núm. 49 de 1935 allí envuelta. Tampoco en la sección 30 de la Ley de Salario Mínimo, supra, se hizo tal exención. Para otras discusiones sobre este problema, véanse: *Packard Co.* v. *Labor Board,* 330 U.S. 485; *Labor Board* v. *Atkins & Co.,* 331 U.S. 398; *Board* v. *Hearst Publications,* 322 U.S. 111; *National Labor Relations Board* v. *Armour & Co.,* 154 F.2d 570 (C.C.A. 10th, 1946); *Ritch* v. *Puget Sound Bridge & Dredging Co.,* 156 F.2d 334 (C.C.A. 9th, 1946) y Anotación en 169 A.L.R. 435.

Arguye, sin embargo, la apelante que ella no está sujeta a las disposiciones de la Ley núm. 49 de 1935 en cuanto a la jornada de trabajo fijada en ocho horas y, como consecuencia, tampoco al pago de horas extras trabajadas por sus empleados, debido a que la Autoridad de Tierras no es una empresa comercial, industrial o agrícola con fines lucrativos, ya que dicha ley en su sección 1 dispone, en lo pertinente, que "A ninguna persona se le empleará o se le permitirá que trabaje en ningún establecimiento comercial, industrial, agrícola o en cualquier otro negocio lucrativo, más de ocho (8) horas durante cualquier día natural. . ." Sostiene además la apelante, que debemos revisar de nuevo nuestra decisión en *Lebrón* v. *Servicio de Acueductos,* supra, pues dicho caso fué mal resuelto, ya que la cuestión planteada y a resolver no era si el Servicio de Acueductos y Alcantarillados de Puerto Rico está exento por la ley de su creación o por ley otra alguna, de observar y cumplir con las disposiciones que regulan las horas de trabajo, sino que la cuestión a resolver en aquél, y en este caso, es si dicho Servicio, y aquí la Autoridad de Tierras, era y es un establecimiento comercial, una industria o negocio lucrativo.

No tiene razón la apelante. En el caso de *Lebrón,* supra, dijimos, a la pág. 5, que no creíamos necesario "entrar a considerar y resolver si la corporación demandada es o no es una empresa o negocio lucrativo, *pues entendemos que en uno y en otro caso* las leyes reguladoras de los salarios y condiciones de trabajo son aplicables al Servicio de Acueductos y Alcantarillados de Puerto Rico." (Bastardillas nuestras.) Dijimos esto después de analizar la Ley núm. 40 de mayo 1 de 1945 (pág. 139), creadora del Servicio de Acueductos y Alcantarillados de Puerto Rico y especialmente la sección 5(*b*) que dispone que "Los tipos de salarios y otros términos y condiciones de empleo en el Servicio no serán de menor remuneración, ni en general menos favorables a los intereses de los empleados que los salarios, términos y condiciones prevalecientes en empleos análogos en la comunidad en que se desempeñan tales empleos" y resolvimos que esas disposiciones son "un mandato expreso del legislador al 'Servicio', al efecto de que deberá pagar a sus empleados salarios que no sean menores que los que se pagan en la comunidad a empleados de igual clase; y que los otros términos y condiciones de empleo—número de horas de trabajo, remuneración por horas adicionales y días de descanso—no serán menos favorables a los intereses de los empleados, que los términos y condiciones prevalecientes en la comunidad en que se desempeñan tales empleos. Los únicos tipos de salarios y términos y condiciones de empleo que pueden prevalecer en cualquiera comunidad insular son aquellos que se ajusten a los requisitos de las leyes vigentes."

Examinemos, pues, la ley creadora de la Autoridad de Tierras para ver si el legislador en alguna forma expresó su intención en materia tan importante como ésta. Es un hecho aceptado que la finca en donde prestó sus servicios el demandante es una de las llamadas Fincas de Beneficio Proporcional bajo el Título Cuarto y reguladas por los artículos 64 a 73 de la Ley núm. 26 de 1941, supra.

El inciso (*b*) del artículo 65 de la Ley según fué enmendado por la Ley núm. 202, aprobada el 15 de mayo de 1943 (pág. 721) dipsone:

"(*b*) Que los trabajadores que trabajen en la parte de la finca no cedidas en estas parcelas percibirán por cada día de trabajo, o parte del mismo, en calidad de anticipo, *el jornal o salario corriente prevaleciente en la región, o que hubiese sido estipulado por ley* y que cada trabajador tendrá derecho, en una fecha o fechas anuales estipuladas, a recibir una proporción de los ingresos netos de la finca en proporción a los jornales o salarios que haya devengado como anticipo por su trabajo en dicha finca. Esta disposición del contrato incluirá, no solamente a los trabajadores que tuvieren parcelas en la finca, sino a todos los trabajadores que en cualquier momento trabajaren por disposición del arrendatario en la finca. *En todos los contratos de arrendamiento de esta naturaleza la Autoridad incluirá una cláusula disponiendo que en las fincas regirá la jornada legal de trabajo y ordenando al arrendatario a pagar las horas extras de trabajo conforme a la legislación vigente.*" (Bastardillas nuestras.)

¿Cómo puede sostenerse con visos de razonabilidad que si la Autoridad de Tierras está obligada a incluir en todo contrato de arrendamiento de una finca de beneficio proporcional una cláusula disponiendo que en las fincas regirá la jornada legal de trabajo, ocho horas, y ordenando al arrendatario a pagar las horas extras de trabajo conforme a la legislación vigente, la misma Autoridad de Tierras, cuando como en el presente caso, de un empleado suyo se trata, no esté obligada a cumplir con la legislación vigente sobre la jornada legal de trabajo y al pago de las horas extras? No podemos atribuir a la Legislatura de Puerto Rico la intención de eximir a la Autoridad de Tierras de dicho cumplimiento por el mero hecho de que la Autoridad no sea una empresa comercial, industrial o agrícola con fines lucrativos. Aunque no lo sea—*Cf. The People of Porto Rico* v. *Eastern Sugar Associates,* 156 F.2d 316, 325 (C.C.A. 1st, 1946)—las disposiciones de los artículos 65(*b*), supra, y 67 de la Ley núm.

26 de 1941, según enmendada, *infra,* expresamente, a nuestro juicio, la obligan a cumplir con la legislación vigente sobre horas y salarios.

A ese efecto, si por cualquier razón la Autoridad explotara una de las fincas de beneficio proporcional, lo que no sucede en este caso, el artículo 67 de la Ley dispone:

"Artículo 67.—Durante cualquier período en que la Autoridad hubiese de administrar directamente una Finca de Beneficio Proporcional, por terminación del arrendamiento, *o por cualquiera otra causa, los trabajadores seguirán devengando los mismos beneficios que si estuviera la finca bajo la administración de un arrendatario,* incluyendo a los que tuvieren el uso de parcelas en dicha finca, en lo que se refiere a dichas parcelas tanto como *en lo que se refiere a los salarios, jornales* o anticipos y a la parte proporcional que le correspondiere a cada uno del ingreso neto de la finca." (Bastardillas nuestras.)

Así pues es clara la intención de la Legislatura al efecto de que la Autoridad está obligada a cumplir con la legislación vigente sobre horas y salarios. Cualquier otra interpretación sería dejar huérfanos de los beneficios de esta legislación de carácter social a los trabajadores y empleados de la Autoridad de Tierras. Estamos convencidos que ésa no fué la intención legislativa.

■■ Sostiene además la apelante que la corte inferior erró al imponerle la penalidad provista en la sección 25 de la Ley de Salario Mínimo, supra, y arguye que la misma le priva de su propiedad sin el debido procedimiento de ley y le niega la igual protección de las leyes, todo ello en violación de las disposiciones de la enmienda quinta de la Constitución de los Estados Unidos y de la sección 2 del Acta Orgánica de Puerto Rico. Cita en apoyo de su contención los casos de *St. Louis, I. M. & S. Ry. Co.* v. *Wynne,* 224 U.S. 354 y *Chicago, Mil. & St. Paul Ry. Co.* v. *Polt,* 232 U.S. 165.

Es en cuanto a este alegado error que el Comisionado del Trabajo ha intervenido como *amicus curiae* solicitando sostengamos la validez de la penalidad impuesta a la Autoridad

de Tierras. Aun cuando el amicus curiae haya querido limitar su intervención, es obvio que si sostiene la legalidad de la penalidad impuesta, *a fortiori* acepta que la Autoridad de Tierras es responsable del pago de los salarios devengados por el demandante por horas extras trabajadas, ya que la penalidad, de proceder, es como consecuencia de la condena original. Decimos esto porque no comprendemos por qué el Comisionado del Trabajo ha limitado el alcance de su intervención en este caso si tomamos en consideración que la misma sección 25 de la ley dispone que "el Comisionado del Trabajo . . . podrá constituirse en demandante o interventor en toda acción o procedimiento judicial que cualquiera persona interponga *en relación con la aplicación de esta Ley* o de un decreto, reglamento, resolución u orden de la Junta", sin limitación alguna. (Bastardillas nuestras.)

La contención principal de la apelante en cuanto a este error es que, habiendo el apelado reclamado en su demanda $5,350.12 por salarios dejados de percibir, al sólo reconocerle la corte derecho a percibir $1,671.70, es forzoso concluir "que no hubo temeridad alguna por parte de la demandada-apelante al defenderse de una reclamación a todas luces excesiva e injusta."

La sección 16(*b*) del *Fair Labor Standards Act,* 29 U.S.C.A. sec. 216(*b*), pág. 255, en lo pertinente dispone que "Cualquier patrono que viole las disposiciones de las secciones 206 ó 207 de este título [estas secciones se refieren a salarios mínimos y horas máximas de trabajo] será responsable al empleado o empleados afectados en la suma de sus salarios mínimos no satisfechos o de su compensación por horas extras, según sea el caso, y en una suma igual adicional como *daños liquidados. . . .*" (Corchetes y bastardillas nuestros.) En el caso de *Cardona* v. *Corte,* 62 D.P.R. 61, 70, 71, dijimos que la sección 25 de la Ley núm. 8 de 1941 había sido tomada prestada de la Ley Federal al disponer, originalmente, que el obrero tenía una acción civil para recla-

mar su salario "más una suma igual al cincuenta (50) por ciento de las cantidades dejadas de satisfacer por concepto de penalidad adicional." Fué por la enmienda de 1947, supra, que se aumentó la penalidad a una suma igual a la obtenida en la sentencia. En el mismo caso de *Cardona,* pág. 76, citamos el de *Overnight Motor Co.* v. *Missel,* 316 U.S. 572, en el cual se resolvió que los "daños liquidados" a que se refiere el *Fair Labor Standards Act* "son una compensación, no una penalidad o castigo por parte del Gobierno." Es cierto que aun cuando en distintas partes de la opinión en el caso de *Cardona,* hicimos referencia a la sección 25 de Ja Ley núm. 41 de 1941, expresamente hicimos constar también en el escolio 2, que ". . . cualesquiera referecias a la Ley núm. 8 de 1941 en esta opinión han sido sencillamente a manera de ejemplo. No sería propio de nuestra parte en este caso pasar sobre el alcance o validez de tal estatuto o de cualquier disposición del mismo." Es ahora que nos confrontamos con el problema de determinar si la "penalidad" impuesta en la sección 25, supra, es mandatoria y, de serlo, si aplicada a los hechos del presente caso, la hace inconstitucional según sostiene la apelante.

Si comparamos la sección 16(*b*) del *Fair Labor Standards Act,* supra, con la sección 25 de nuestra ley, veremos que la primera no contiene la frase final de la segunda al efecto de que los obreros o empleados pueden reclamar sus salarios adeudados, más la penalidad "sin que para nada de ello obste pacto en contrario." Eso no obstante, por interpretación judicial de la sección 16(*b*) de la Ley Federal, supra, se ha resuelto que los "daños liquidados" a que se refieren dicha sección no pueden ser renunciados (*waived*) por los obreros y empleados—*Brooklyn Bank* v. *O'Neil,* 324 U.S. 697—y tampoco pueden ser objeto de un arreglo o convenio de una disputa *bona fide* en cuanto a si la ley es aplicable o no en tal forma que releve al patrono de la obligación de pagarlos. *Schulte Co.* v. *Gangi,* 328 U.S. 108. El funda-

mento principal de estas decisiones se basa en que los "daños liquidados" son de carácter mandatorio debido a la cuestión de política pública envuelta. En el caso de *Schulte Co.* v. *Gangi,* supra, a las págs. 115-16, se expresó la corte en esta forma:

"Los motivos por los cuales llegamos a la conclusión de que las transacciones de controversias verdaderas sobre la aplicación de la ley, que no requieren el pago total de salarios no pagados y de daños liquidados, no difieren mayormente de aquéllos que nos llevaron a condenar las renuncias de daños liquidados en el caso de *O'Neil.* En él dijimos, 324 U.S. a la pág. 708:

" 'La misma política que prohibe la renuncia del mínimo estatutario como necesaria al libre desenvolvimiento del comercio exige que se tomen medidas para reparar el daño ocasionado al no pagarse a tiempo, con el fin de cumplir con los propósitos del Congreso. Más aún, la misma política que le prohibe al empleado renunciar el tipo mínimo estatutario debido a la desigualdad del poder de negociar, prohibe a estos mismos empleados negociar con su patrono para determinar si el daño ocasionado fué tan poco que procede la renuncia del daño liquidado.' En un convenio *bona fide* sobre aplicación de la ley, existen las mismas amenazas a los propósitos públicos de la Ley de Horas y Salarios, que existen cuando se renuncian los daños liquidados. Los daños son al mismo tiempo compensatorios y una ayuda para poner en vigor la ley. Es bien cierto que la disposición sobre daños liquidados, *opera rigurosamente sobre los patronos cuyas infracciones no son deliberadas sino que surgen de incertidumbres o errores en cuanto a la aplicación de la ley.* Toda vez que la posibilidad de infracciones es inherente en cada caso de empleo cubierto por la ley, el Congreso evidentemente creyó que no debía proveer una compensación variada para ajustarse al grado de culpa en cada infracción. Por el contrario, *el Congreso adoptó un requisito mandatorio al efecto de que el patrono pagará una suma de daños liquidados igual a los salarios no pagados, para compensar al empleado perjudicado por la retención de su paga.*

"Nos damos cuenta de que esta conclusión poné al patrono y a sus empleados en una posición de 'todo o nada,' según fraseó el Juez Chase el resultado en su opinión disidente en la corte inferior. Teóricamente esto quiere decir que cada parte obtiene lo que merece, ni más ni menos. La alternativa es encontrar en la ley una intención del Congreso de dejar los ajustes para negociar a lo peor

entre patronos y empleados individuales, o a lo mejor entre patronos y los representantes, agentes para negociar o alguna otra persona elegidos por los empleados. Creemos que el propósito de la ley, que según dijimos en el caso de *O'Neil* fué conseguirle al sector más mal pagado de los obreros de la nación una paga decorosa, fuerza la conclusión de que ni los salarios ni los daños concedidos por retener aquéllos, están sujetos a ser reducidos mediante la transacción de controversias en cuanto a la aplicación de la ley. Tal transacción frustra la política pública de salarios mínimos a ser pagados prontamente, comprendida en la Ley de Horas y Salarios, reduciendo la suma seleccionada por el Congreso como una compensación adecuada por la retención de salarios.'' (Bastardillas nuestras.)

Con mayor razón tenemos que resolver que la penalidad adicional prescrita en la sección 25, supra, de nuestra ley, es mandatoria cuando expresamente nuestra Legislatura dispuso que todo obrero o empleado al reclamar salarios adeudádosle tendrá derecho a una suma igual, por concepto de penalidad adicional, ''sin que para nada de ello obste pacto en contrario.''

El hecho de que en nuestra ley se le denomine como una ''penalidad adicional'' no es óbice para que al igual que la Corte Suprema Nacional consideró que los ''daños liquidados'' de la sección 16(*b*), supra, no eran una penalidad y sí una compensación, consideremos también la llamada ''penalidad adicional'' como una compensación adicional. El fin perseguido con esta disposición no es penalizar al patrono sino compensar al trabajador por salarios que debió haber recibido a su debido tiempo. *Newman* v. *George A. Fuller Co.*, 48 A.2d 345. En el caso de *Brooklyn Bank* v. *O'Neil*, supra, págs. 707–8, se expone claramente cuál fué la intención del Congreso al aprobar la Ley Federal:

''Anteriormente hemos resuelto que la disposición sobre daños liquidados no es penal en su naturaleza sino que constituye una compensación por la retención de la paga de un obrero, que podría resultar en daños difíciles de estimar y de probar, a no ser mediante daños liquidados. *Overnight Motor Co.* v. *Missel*, 316 U.S.

572. Constituye un reconocimiento del Congreso de que el dejar de pagar a tiempo el mínimo estatutario puede ser tan perjudicial al mantenimiento de la norma mínima de vida 'necesaria a la salud, eficiencia y bienestar general de los trabajadores' y al libre desenvolvimiento del comercio, que debe hacerse una paga doble en caso de mora con el fin de asegurar la restauración del obrero a esa norma mínima de bienestar social. Los empleados que reciben menos del mínimo estatutario no es probable que tengan recursos suficientes para conservar su bienestar y eficiencia hasta que tales sumas les sean pagadas en una fecha futura.''

Como bien dice el amicus curiae en su alegato no debemos ''presumir en nuestra Legislatura, al aprobar la sección 25 de la Ley de Salario Mínimo, un celo menor en sus razones de política pública para proteger a nuestros trabajadores, cuyos salarios y condiciones de vida son inferiores que los de los trabajadores del continente, que el que tuvo el Congreso por tales razones de política pública al aprobar la sección 16(*b*) de la *Fair Labor Standards Act*.''

Arguye la apelante que ella no fué temeraria al defenderse de una reclamación de $5,350.12 cuando la sentencia sólo reconoció al demandante derecho a percibir $1,671.70; que actuó de buena fe y como consecuencia, que la penalidad no debió imponérsele. La contestación a este argumento está contenida en aquella parte del caso de *Schulte Co.* v. *Gangi,* supra, en la que se dice que ''Es bien cierto que la disposición sobre daños liquidados, opera rigurosamente sobre los patronos cuyas infracciones no son deliberadas sino que surgen de incertidumbres o errores en cuanto a la aplicación de la ley. Toda vez que la posibilidad de infracciones es inherente en cada caso de empleo cubierto por la ley, el Congreso evidentemente creyó que no debía proveer una compensación variada para ajustarse al grado de culpa en cada infracción.'' Siendo mandatoria la sección 25, supra, la falta de temeridad o la buena fe del patrono no constituye una defensa y, una vez probado que el obrero no recibió, a su debido tiempo, todos los salarios a que tenía derecho, las

cortes vienen obligadas a concederle una cantidad igual a la dejada de percibir. Cuando el Congreso de Estados Unidos quiso obviar el resultado de la opinión en el caso de *Schulte Co.* v. *Gangi,* supra, lo hizo expresamente al aprobar el llamado *Portal-to-Portal Act* de mayo 14 de 1947, cap. 52, 61 Stat. 84, 29 U.S.C.A. sec. 251 a 262, en el cual se autorizó la renuncia o arreglo de las reclamaciones de los obreros, bajo ciertas condiciones (29 U.S.C.A. sec. 253) y se estableció la defensa de la buena fe del patrono si alega y prueba que actuó de acuerdo con un reglamento, orden o interpretación administrativos de cualquier agencia de los Estados Unidos o de una práctica administrativa de tal agencia (29 U.S.C.A. sec. 258) o si prueba que actuó de buena fe y si tenía motivos razonables para creer que su actuación u omisión no era en violación de la ley, la corte puede, en su discreción, no conceder daños liquidados o conceder una suma menor a la establecida en la sección 16(*b*), (29 U.S.C.A. sec. 260).

Empero, nuestra Legislatura, al enmendar en 1947 la sección 25, supra, expresamente dispuso que la penalidad se impondría "sin que para nada . . . obste pacto en contrario". Si bien posteriormente al aprobar la Ley núm. 379 de 15 de mayo de 1948 ((1) pág. 1255) estableciendo la jornada de trabajo en Puerto Rico, la cual derogó la núm. 49 de 1935, supra, por su sección 13,(⁷) autorizó las transacciones judiciales y extrajudiciales en estos casos, lo fué con la limitación de que el Comisionado del Trabajo debe intervenir en los mismos. Continúa, pues, teniendo el carácter de manda-

---

(⁷)Esta sección, en lo pertinente, dispone:

"Todo empleado que reciba una compensación menor que la fijada en esta Ley para horas regulares y horas extras de trabajo, tendrá derecho a recobrar de su patrono mediante acción civil las cantidades no pagadas, más una suma igual por concepto de liquiación de daños y perjuicios, además de las costas, gastos y honorarios de abogado del procedimiento.

"* * * * * * *

"La reclamación judicial podrá establecerla uno o varios empleados por y a nombre suyo o de ellos y de otros empleados que estén en circunstancias similares; *Disponiéndose,* que después de iniciada judicialmente la reclamación,

toria la sección 25, supra, no empece la falta de temeridad o la buena fe del patrono, cuando no concurran los hechos que puedan hacerla inaplicable bajo la Ley núm. 379 de 1948.

Los casos de *St. Louis I. M. & S. Ry Co.* v. *Wynne*, y *Chicago, Mil. & St. Paul Ry. Co.* v. *Polt*, citados por la apelante, son a nuestro juicio, claramente inaplicables a los hechos del presente. Se refieren ellos a una penalidad impuesta en adición a los daños probados en el juicio y no a la clase de penalidad de la sección 25, supra, a manera de daños liquidados, por no ser éstos susceptibles de prueba.

Los demás errores señalados por la apelante se refieren a la apreciación de la prueba hecha por la corte inferior, y la aparente incongruencia en el uso de una frase de su opinión en relación con otras conclusiones de hecho. Hemos examinado detenidamente la transcripción de la evidencia y la prueba del apelado creída por la corte es suficiente para sostener la sentencia, *la cual debe ser confirmada.*

ésta podrá ser transigida entre las partes, con la intervención del Comisionado del Trabajo y la aprobación de la Corte.

"Será nula toda transacción extrajudicial sobre el pago del salario correspondiente a las horas regulares, a las horas extras de trabajo o sobre el pago de la suma igual a la reclamada que fija esta Ley por concepto de liquidación de daños y perjuicios; *Disponiéndose, sin embargo,* que será válida a los *propósitos de esta Ley toda transacción que se verifique ante el Comisionado del Trabajo o cualquiera de los abogados del Departamento del Trabajo, designado por dicho Comisionado."* (Bastardillas nuestras.)