BASILISO CORREA TORRES, demandante y apelado, *v.* SOCIEDAD MARIO MERCADO E HIJOS, demandada y apelante.

Núm. 10294.—*Sometido:* Diciembre 1, 1950. *Resuelto:* Enero 31, 1951.

----

*Pedro M. Porrata* y *Charles Cuprill,* abogados de la apelante;
*Frank Torres,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR DE JESÚS emitió la opinión del tribunal.

Basiliso Correa Torres demandó a la sociedad Mario Mercado e Hijos en reclamación del salario correspondiente a las horas extras trabajadas como mayordomo en fincas de la demandada durante el período comprendido entre el 7 de noviembre de 1935 y el 30 de abril de 1949.

Alegó como fundamentos de su reclamación que durante dicho período trabajó catorce horas diarias incluyendo los domingos; que desde el 7 de noviembre de 1935 hasta el 2 de enero de 1941 su salario fué de $9 semanales; desde el 3 de enero de 1941 hasta el 29 de diciembre de 1943, $12 semanales; y desde el 30 de diciembre de 1943 hasta el 30 de abril de 1949 su salario fué de $14 semanales.

Luego de un juicio en sus méritos la corte a quo declaró probado que durante todo el tiempo en que el demandante fué empleado de la demandada, es decir, desde el 7 de noviembre de 1935 (¹) hasta el 30 de abril de 1949, el demandante trabajó siete días semanales a razón de diez horas diarias; que desde el 7 de noviembre de 1935 hasta el 28 de abril de 1943, fecha en que entró en vigor el Decreto Mandatorio núm. 3 de la Junta de Salario Mínimo de Puerto Rico, el demandante, de conformidad con lo resuelto en el caso de

___

(¹) Se considera, a los efectos de este caso, el 7 de noviembre de 1935 como la fecha en que comenzó a trabajar el apelado porque desde entonces entró en vigor la Ley núm. 49 de 1935 ((2) pág. 539).

*Cardona* v. *Corte*, 62 D.P.R. 61, tenía derecho al remanente de su salario correspondiente a la novena hora trabajada diariamente, por lo que le concedió hasta el 28 de abril de 1943 un total de $388.83; por el período comprendido entre el 29 de abril de 1943 hasta el 30 de abril de 1949, aplicando el Decreto Mandatorio núm. 3 de la Junta de Salario Mínimo, le concedió por todas las horas extras a tipo doble la cantidad de $2,106.20, teniendo en cuenta los dos tipos de salarios de $12 y $14 semanales, respectivamente, que recibía durante dicho período. Y desde abril 9 de 1946 en que entró en vigor la Ley núm. 289 de 1946 ((1) pág. 683) que concede un día de descanso por cada seis de trabajo, y dispositiva además de que en casos de que se trabaje el día de descanso se pagará por éste doble jornal, le concedió $316, dictando sentencia a favor del demandante por la cantidad total de $2,667.38, (²) más las costas y $300 para honorarios de abogado. De esta sentencia apeló la demandada.

■■ No hay controversia en cuanto a la alegación de que el demandante estuvo empleado con la demandada desde el 7 de noviembre de 1935 hasta el 30 de abril de 1949; tampoco la hay en cuanto al salario semanal de $9, $12 y $14 respectivamente en las fechas alegadas por el apelado. Pero hubo disparidad en la prueba respecto al número de horas diariamente trabajadas y en lo que respecta a que durante todo el tiempo en que estuvo empleado con la demandada, el demandante trabajó los siete días en cada semana. Sin embargo, un examen de la prueba presentada demuestra que hubo evidencia tendiente a sostener la conclusión a que con respecto a estos dos puntos llegara la corte a quo, y no habiéndose demostrado que al así apreciar la prueba actuara movida por pasión, prejuicio o parcialidad o incurriera en error manifiesto, no debemos intervenir con la discreción de la corte a quo. Y en cuanto a la naturaleza del trabajo que realizó durante todo el tiempo de su empleo con la apelante,

---

(²) Sumadas las pártidas concedidas totalizan $2,811.03 y no $2,667.38 como resulta de la sentencia.

la corte llegó a las siguientes conclusiones: que el apelado tenía bajo sus órdenes de doce a catorce hombres, los cuales se dedicaban a labores agrícolas; que supervisaba y dirigía a dichos obreros, y podía emplearlos y despedirlos, pero para ello debería recibir órdenes(³) de Antonio Rullán, Jefe de Zona de la apelante; y además volteaba la finca diariamente, sin que exista controversia sobre las gestiones antes enumeradas.

A base de estos hechos la corte a quo, al determinar la compensación que correspondía al apelado desde el 7 de noviembre de 1935 hasta el 28 de abril de 1943, aplicó la sección 1 de la Ley núm. 49 de 1935, Sesión Extraordinaria (pág. 539),(⁴) según fué interpretada en el caso de *Cardona* v. *Corte*, supra, es decir, que el apelado tenía derecho a percibir el remanente del salario correspondiente a la novena hora trabajada a tipo sencillo, ya que su salario semanal de acuerdo con su contrato con el patrono incluía a tipo sencillo todas las horas trabajadas durante el día.

Al así aplicar la ley, la corte a quo actuó correctamente, ya que de conformidad con la misma sus disposiciones son aplicables *a toda persona que trabaje en cualquier negocio lucrativo.* De manera, pues, que independientemente de la naturaleza del trabajo que realizara para su patrono, el apelado tenía derecho a compensación por las novenas horas trabajadas durante este período.

■ Es verdad que en la sección 4 de la Ley núm. 49 de 1935 al definir el término "patrono", dice que "incluye toda

---

(³) Parece conveniente aclarar, que conforme resulta de la evidencia las órdenes que el demandante debía recibir de Rullán, eran al efecto de que hiciera o suspendiera determinado trabajo. Cuando de acuerdo con las órdenes de Rullán se iba a emprender un trabajo, el demandante tenía plena autoridad para seleccionar y emplear personal e igual discreción tenía para despedir obreros, cuando de suspender un trabajo se trataba.

(⁴) La sección 1 prescribe en parte como sigue:

"A ninguna persona se le empleará o se le permitirá que trabaje en ningún establecimiento comercial, industrial, agrícola o en cualquier otro negocio lucrativo, más de ocho (8) horas durante cualquier día natural. . ."

persona natural o jurídica y el administrador, superinten-
dente, capataz, mayordomo y representante de dicha per-
sona natural o jurídica"; pero como dijéramos en *Tulier* v.
*Autoridad de Tierras*, 70 D.P.R. 267, 272, citando de *Amer-
ican Steel Foundries* v. *National Labor Rel. Bd.*, 158 F.2d
896, 898 (C.C.A. 7, 1946), la inclusión de los términos "ma-
yordomo" y "capataz", "significa solamente que las conse-
cuencias de sus actos *pueden* ser atribuídas a su patrono y
que en ese sentido nada más es que dicho trabajador ocupa
el status de patrono."

■■ En lo que respecta al período comprendido entre
el 29 de abril de 1943, en que entró en vigor el Decreto Man-
datorio núm. 3 de la Junta de Salario Mínimo, hasta el 30
de abril de 1949 en que terminó el contrato de trabajo, le
concedió todas las horas extras a tipo doble, por entender que
el trabajo que realizaba el apelado era el de mayordomo y
que estaba comprendido dentro de las disposiciones del refe-
rido Decreto Mandatorio.

Tratando del salario mínimo en la fase agrícola, pres-
cribe el Decreto:

"1. Salarios Mínimos.—Todo patrono que emplee trabaja-
dores en la fase agrícola de la industria del azúcar vendrá obli-
gado a pagarle a los mismos por lo menos a razón de los siguien-
tes tipos de salarios para las distintas ocupaciones o trabajos
detallados a continuación por las primeras ocho (8) horas de
trabajo realizadas en cualquier período de veinticuatro (24)
horas, con excepción de aquéllos que trabajen como zanjeros,
limpiadores de zanjas, chapodeadores y limpiadores de caños
con machete y hacheros limpiando traviesas dentro del agua,
y regadores, en sistemas de riego que no son por gravedad,
cuando trabajan dentro del agua, a los cuales el tipo de salario
mínimo diario aplicable será por las primeras siete (7) horas
de trabajo realizado durante cualquier período de veinticuatro
(24) horas:

| "Ocupación | "Tipos para Fincas no Pequeñas o que no sean del Interior | Tipos para Fincas Pequeñas o del Interior |
|---|---|---|
| "(a) Toda clase de trabajo excepto los abajo clasificados............ | $1. 50 | $1. 40 |
| "(b) Zanjeros; limpiadores de zanjas; hacheros en zanjas; chapodeadores; regadores en sistemas de riego que no son por gravedad, cuando trabajan dentro del agua o en terrenos pantanosos; operadores de bombas.. | 1. 70 | 1. 55 |
| "(c) Cortadores de caña; grueros; emburradores; timoneros; y llenadores de carros de caña... | 1. 80 | 1. 65 |
| "(d) Carreteros en recolección; plancheros; llenadores de vagones; y conductores de vagones.... | 1. 90 | 1. 75 |
| "(e) Operadores de tractores....... | 2. 20 | 2. 05 |
| "(f) Auxiliares de carpinteros; albañiles; mecánicos; p i n t o r e s; electricistas y de otros obreros de artes y oficios............ | 2. 40 | 2. 20 |
| "(g) Carpinteros; albañiles; mecánicos; pintores; electricistas y otros obreros de artes y oficios | 3. 25 | 3. 00 |

". · · · · · · ·

"4. *Horas de Labor:*

"(a) *Máximo de horas de trabajo diarias.*

"Ningún patrono empleará a trabajador alguno en la fase agrícola de la industria del azúcar, por más de ocho (8) horas en cualquier período de veinticuatro (24) horas a menos que dicho trabajador reciba compensación por su trabajo en exceso de dichas ocho (8) horas a razón de tiempo doble el tipo mínimo de salario aplicable de acuerdo con la escala establecida en el apartado A–1 de este Decreto; . . ."

Atendida la naturaleza del trabajo que realizaba el apelado, preciso es concluir, como concluyó la corte a quo, que

aquél era un mayordomo. Sentada esta premisa, la cuestión a resolver se reduce entonces a determinar si erró la corte inferior al resolver qué como tal mayordomo el apelado está comprendido dentro de las disposiciones del Decreto. Bastará examinar las disposiciones del mismo antes transcritas para concluir que no lo está. Esto es así porque en ellas específicamente se enumeran los distintos trabajos a que el Decreto se contrae, y para cada trabajo fija un salario mínimo, no apareciendo entre esos trabajos el que realizan los mayordomos. La corte a quo, sin embargo, concluyó que el Decreto es aplicable a los mayordomos por entender que están comprendidos en aquella parte del mismo que dice: "Toda clase de trabajo excepto los abajo clasificados. . $1.50."

Pero a nuestro juicio no fué la intención de la Junta de Salario Mínimo incluir en esta cláusula general a los mayordomos, sencillamente porque no obstante la relativa importancia del trabajo que ellos realizan, les estaría fijando un salario mínimo inferior al de los obreros que trabajan a sus órdenes, especialmente al de los zanjeros, limpiadores de zanjas, etc., cuyo salario mínimo fué fijado en $1.70.

Erró, pues, la corte inferior al aplicar a este período las disposiciones del Decreto que ordenan al patrono a pagar a tipo doble todas las horas diariamente trabajadas en exceso de ocho.

No siendo de aplicación el Decreto Mandatorio, este período, hasta el 15 de mayo de 1948, debe regirse por las disposiciones de la Ley núm. 49 de 7 de agosto de 1935 según fué interpretada en el caso de *Cardona* v. *Corte*, supra. Esto es así, porque la Ley 379 de 15 de mayo de 1948 ((1) pág. 1255) derogó la núm. 49 de 7 de agosto de 1935.

■■ Procede ahora considerar si bajo la Ley núm. 379 de 15 de mayo de 1948, el apelado, siendo como era un mayordomo, tiene derecho a recibir compensación a tipo doble por el tiempo trabajado en exceso de 8 horas diarias y 48 horas semanales. Esta Ley al definir el término em-

pleado, (⁵) expresamente dispone que el mismo no incluirá ejecutivos, administradores ni profesionales. Es obvio que el apelado no puede calificarse como un administrador, ni mucho menos como un profesional. Por consiguiente, la cuestión a resolver queda reducida a determinar si el apelado era un ejecutivo. Conforme declaró probado la corte, él tenía facultades para emplear y despedir obreros; tenía bajo sus órdenes un grupo de obreros, supervisaba y dirigía los trabajos y volteaba la finca. Tales facultades, a nuestro juicio, lo colocan bajo la clasificación de un ejecutivo. (⁶) *Ralph Knight* v. *Mantel*, 135 F.2d 514, 517 (C.C.A. 8, 1943); *Marshall–Wells Co.* v. *Hawley*, 53 F. Supp. 295 (D.C. Minn., 1942); cf. *Tulier* v. *Autoridad de Tierras*, supra; *Chabrán* v. *Bull Insular Line*, 69 D.P.R. 269, 275. Siendo el apelado un ejecutivo, no tiene derecho a compensación a tipo doble por las horas trabajadas en exceso de 8 diarias y de 48 semanales.

■ Réstanos determinar si erró la corte inferior al conceder al apelado compensación a tipo doble por el día de des-

---

(⁵) La Ley núm. 379 de 1948 en lo pertinente prescribe: "Artículo 19. En esta Ley, a menos que del contexto de ella se deduzca otra cosa, se aceptarán las siguientes definiciones de palabras y frases de la misma:

" 'Empleado', incluye a todo empleado, obrero, jornalero, artesano, trabajador, oficinista, dependiente de comercio y a toda persona empleada mediante salario, sueldo, jornal u otra forma de compensación en cualquier ocupación, establecimiento, negocio o industria, con excepción de *agentes viajeros y vendedores ambulantes.* La palabra 'Empleado' no incluirá ejecutivos, administradores ni profesionales."

(⁶) Es muy significativo en relación con la naturaleza del empleo que desempeñaba el demandante, el hecho de que éste mientras trabajó con la demandada no fué miembro de unión alguna y la circunstancia adicional de que al separarse de su empleo, lo anunció mediante carta de 14 de marzo de 1949 (Exhibit A de la Demandada) la cual en lo pertinente dice:

"Como Ud. deberá saber, he estado prestando mis humildes servicios a la razón social que Ud. dignamente preside, por más de treinta años, la mayoría de los cuales, de veintitrés a veinticuatro años, los he desempeñado *como Mayordomo Encargado* de la colonia Buena Vista . . .

. . .

"Vería con agrado que me concedieran el retiro por incapacidad física para ser efectivo a fin del entrante mes de abril del año en curso . . ." (Subrayado nuestro.)

canso provisto por la Ley núm. 289 de 9 de abril de 1946.([7]) Del texto de esta ley claramente surge que sus disposiciones, como las de la Ley núm. 49 de 1935, son aplicables a todo empleado, pues al definir el término empleado([8]) a los efectos de la ley, no hace exclusión de clase alguna, contrario a lo que sucede en la 379 de 1948 antes mencionada. Siendo elló así, no erró la corte al aplicar al presente caso las disposiciones de la Ley núm. 289 de 1946.

De conformidad con los principios enunciados en esta opinión, el apelado tiene derecho a que se le paque a tipo sencillo el remanente de la novena hora desde el 7 de noviembre de 1935 hasta el 15 de mayo de 1948, o sea $747.98; y desde el 9 de abril de 1946 hasta el 30 de abril de 1949 tiene derecho a compensación por los 159 días de descanso trabajados durante ese período, o sea $318.([9])

*Procede modificar la sentencia en el sentido de reducirla en cuanto al total de la compensación a $1,065.98, eliminar la condena de costas,([10]) y así modificada confirmarla.*

El Juez Asociado Sr. Negrón Fernández se inhibió.

---

([7]) La sección 1 de la Ley núm. 289 de 1946 prescribe:

"Todo empleado de cualquier establecimiento comercial o industrial, empresa o negocio lucrativo que no estuviere sujeto a las disposiciones sobre cierre al público del artículo 553 del Código Penal de Puerto Rico, según ha sido subsiguientemente enmendado, tendrá derecho a un día de descanso por cada seis (6) de trabajo.

"A los efectos de esta Ley, se entenderá por día de descanso un período de veinticuatro (24) horas consecutivas."

([8]) La sección 5 de la Ley núm. 289 de 1946 prescribe:

"A los efectos de esta Ley, se entenderá por empleado a cualquier empleado, obrero, dependiente, trabajador, jornalero, o persona que preste servicio para un patrono mediante salario, sueldo o cualquier otra forma de compensación."

([9]) El apelado trabajó 159 semanas de siete días desde que entró en vigor la Ley núm. 289 de 9 de abril de 1946 hasta que cesó en su empleo el 30 de abril de 1949. Durante ese tiempo recibió un salario de $14 semanales, o sea $2 diarios. Pero como trabajó los días de descanso y la referida Ley núm. 289 dispone que tales días, en caso de trabajarlos, deberán pagársele a tipo doble, el apelado sólo tenía derecho al remanente de la doble compensación, o sea $2 por cada día de descanso que trabajó.

([10]) De acuerdo con la sección 14 de la Ley núm. 10 de 14 de noviembre de 1917 ((2) pág. 217), no procede la condena de costas en esta clase de pleitos.