ROBERT DOYLE, demandante, apelante y apelado, v. POLY-PANE PACKAGING COMPANY, INC., demandada, apelada y apelante.

Número 12172.

*Sometido:* 13 de noviembre de 1957. *Resuelto:* 25 de marzo de 1958.

*Córdova & González* y *Hernán R. Franco,* abogados de la apelante y apelada; *Orlando J. Antonsanti* y *Pascual Amado Rivera,* abogados del apelado y apelante.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

Acogiéndose a las disposiciones de la Ley núm. 10 de 14 de noviembre de 1917, titulada "Ley determinando el procedimiento en caso de reclamaciones de Obreros y Empleados contra sus Patronos por compensación de su trabajo", —32 L.P.R.A., secs. 3101–3117—Robert Doyle interpuso demanda ante el Tribunal Superior, Sala de San Juan, contra Polypane Packaging Co., Inc. En su contestación la demandada aceptó algunos hechos de la demanda, negó otros y además dedujo reconvención reclamándole daños y perjuicios al demandante.

Al comienzo del juicio la demandada planteó la cuestión de que en la demanda se reclamaban daños y perjuicios por incumplimiento de contrato y no salarios devengados, por lo que debía desestimarse la acción. El tribunal a quo procedió entonces a eliminar de la demanda ciertas partidas que

consideró impropias de una reclamación bajo la Ley núm. 10 de 1917, y asimismo eliminó la reconvención aducida por la demandada. Entre las partidas así eliminadas de la demanda figura un derecho de opción a favor del demandante para adquirir por compra cierto número de acciones de la demandada a determinado precio.

El caso fué sometido por la prueba del demandante ya que la demandada descansó en los méritos de una moción de sobreseimiento (*nonsuit*) que fué declarada sin lugar. Más tarde el tribunal formuló las siguientes conclusiones de hecho:

"1.—El demandante y la demandada llevaron a cabo un contrato de servicios el día primero de junio de 1955 a virtud del cual el demandante se obligó a trabajar con la demandada bajo las siguientes condiciones:

"*a*) $8,000 de sueldo anual;

"*b*) Vigencia del contrato por un año a partir del primero de junio de 1955;

"*c*) Prórroga automática del contrato de año en año, sujeta la terminación del contrato a notificación previa por escrito por cualquiera de las partes 90 días antes;

"*d*) La demandada se obligó a pagar al demandante, en calidad de remuneración adicional, 500 acciones comunes a ser devengadas a razón de 1/6 parte de dichas 500 acciones durante el primer mes de empleo y una doceava parte de ahí en adelante por los siguientes diez meses;

"*e*) Asimismo se obligó la demandada, y en calidad de paga adicional, a conceder al demandante una opción para comprar 500 acciones comunes a razón de $3.50 cada una a ser devengadas por el demandante en la misma proporción que las 500 anteriormente relacionadas;

"*f*) Se obligó la demandada a pagar al demandante la suma de $33.33 en concepto de diferencial, y unas vacaciones de dos meses, con paga.

"2.—El salario semanal del demandante, a razón de $8,000 anuales, era de $153.84.

"3.—En marzo 15 de 1956 la demandada prescindió de los servicios del demandante.

"4.—La demandada no ha pagado al demandante ninguna de las sumas anteriormente relacionadas, adeudándole, por lo tanto, las siguientes sumas por los siguientes conceptos:

"(A) El valor de 437 acciones comunes;

"(B) El derecho a comprar 437 acciones comunes en adición a las antes mencionadas;

"(C) $307.68 por concepto de las dos semanas de vacaciones a que tenía derecho el demandante a virtud del contrato celebrado entre las partes;

"(D) $16.66 por el diferencial correspondiente a las dos semanas de vacaciones a que tenía derecho el demandante."

A base de las anteriores conclusiones dictó la siguiente sentencia:

"Se condena a la demandada a pagar al demandante la suma de $324.34 y a entregarle 437 acciones comunes o el valor de éstas en el mercado; poner a disposición del demandante, a razón de $3.50 cada una, 437 acciones comunes en adición a las anteriormente mencionadas. Se condena además a la demandada a pagar al demandante la suma de $500 en concepto de honorarios de abogado, más las costas en que el demandante haya incurrido con motivo de este procedimiento."

Contra esta sentencia la demandada interpuso el presente recurso de apelación. Para asegurar la efectividad de dicha sentencia, el tribunal sentenciador decretó el embargo de bienes de la demandada hasta cubrir la suma de $13,278.54 más intereses y costas y en cumplimiento de esta orden el alguacil embargó la suma de $6,070.20 que la demandada tenía depositada en su cuenta con The Chase Manhattan Bank. La demandada radicó entonces una moción titulada "Moción solicitando levantamiento parcial de embargo y sobre depósito de acciones". Alegó que las únicas sumas que la sentencia le condena a pagar al demandante montan a $825.34; depositó en la Secretaría del tribunal un certificado de acciones comunes suyas por 437 acciones expedido a favor del demandante y otro certificado dando opción a dicho demandante a adquirir por compra 437 acciones comunes adicionales, y solicitó que el embargo trabado se redujera

a la suma de $825.34. Celebrada una vista sobre esta moción el tribunal a quo dictó la siguiente resolución:

"A nuestro entender el depósito en el tribunal de los certificados que obran en autos equivale a la prohibición de enajenar que establece el inciso *a* del art. 2 de la ley aprobada en marzo 1º de 1902 (32 L.P.R.A. sec. 1070). Como lo referente a las acciones en la sentencia en este caso constituye una obligación de dar cosa determinada, sólo se puede asegurar la sentencia mediante la prohibición de enajenar o su equivalente pero no mediante el embargo de fondos, especialmente en el caso que nos ocupa en donde no se ha presentado prueba suficiente para que el tribunal pueda determinar que se está tratando de defraudar al demandante que obtuvo sentencia a su favor, pero que la misma ha sido apelada para ante el Tribunal Supremo. Procede pues, como por la presente se ordena, reducir el embargo de fondos a la cantidad de mil dólares ($1,000)."

No conforme, el demandante apeló. A nuestros fines, consolidaremos ambos recursos y procederemos en primer lugar a resolver el interpuesto contra la sentencia.

██ La demandada-apelante señala en su alegato que el punto principal envuelto en su recurso es si un ejecutivo, jefe y gerente general de una corporación puede establecer querella al amparo de la Ley núm. 10 de 14 de noviembre de 1917, según ha sido enmendada, y a la discusión de esta cuestión dedica los cinco primeros señalamientos de errores.

La citada Ley núm. 10 de 1917 establece un procedimiento sencillo y rápido en los casos en que "un obrero o empleado tiene que reclamar de su patrono cualquier derecho o beneficio, o cualquier suma por concepto de compensación por trabajo o labor realizados para dicho patrono, o por compensación en caso de que dicho obrero o empleado hubiere sido despedido de su empleo, sin causa justificada, . . . . ." La ley define tanto el vocablo "obrero" como el vocablo "empleado". En cuanto a este último dice, " y la palabra 'empleado' comprenderá a toda clase de artesano, empleado o dependiente de comercio o industria, en la acepción general de estas últimas dos palabras".

(32 L.P.R.A., sec. 3102.) No hay controversia en este caso en cuanto a que el demandante es un ejecutivo. No es un dependiente o un artesano pero es un empleado de una industria. Él arrendó sus servicios mediante contrato escrito a la demandada. Al extender sus beneficios a todo empleado de comercio o industria, la Ley núm. 10 no hizo distinción entre las distintas categorías o jerarquías de empleados, ni excluyó, por tanto, de sus disposiciones a aquéllos que ocuparan cargos ejecutivos. Cf. *Correa* v. *Mario Mercado e Hijos*, 72 D.P.R. 80, 88; *De Arteaga* v. *Club Deportivo*, 73 D.P.R. 444, 449; *Sierra* v. *Long Construction Co.*, 76 D.P.R. 417, 421.

La demandada-apelante arguye que para interpretar la Ley núm. 10 de 1917 debemos recurrir a las leyes en *pari materia* y a ese efecto cita las que aparecen reportadas en el Título 29 de las Leyes de Puerto Rico Anotadas. Estas leyes crean derechos sustantivos en beneficio de los obreros y empleados pero para excluir de sus disposiciones a los ejecutivos, profesionales y administradores, la Legislatura lo hizo constar así expresamente disponiendo que los términos "obreros" y "empleados" no excluirían a tales personas. Por ejemplo, la Ley núm. 289 de 1946, fijando un día de descanso por cada seis días de trabajo, disponía que a los efectos de dicha ley "se entenderá por empleado a cualquier empleado, obrero, dependiente, trabajador, jornalero o persona que preste servicios para un patrono mediante salario, sueldo o cualquier otra forma de compensación". Interpretando esta disposición dijimos que un mayordomo tenía derecho a los beneficios de dicha ley porque el término "empleado" no hacía exclusión de clase alguna. *Correa* v. *Mario Mercado e Hijos*, supra. Más tarde la Legislatura decidió excluir de los beneficios de esta ley a determinados empleados, y procedió a enmendarla adicionándole la siguiente disposición: "No se entenderá por empleado, sin embargo, a los profesionales, ejecutivos y administradores." Inter-

pretándola, dijimos que a falta de una disposición expresa excluyéndolos, los ejecutivos estaban cubiertos por dicha ley. *De Arteaga* v. *Club Deportivo*, supra. Más tarde la Legislatura enmendó la Ley de Salario Mínimo (véase la Ley núm. 131 aprobada en 27 de abril de 1950 y la núm. 439, aprobada en 15 de mayo de 1951) y excluyó de sus beneficios, mediante disposición expresa, a los ejecutivos, profesionales y administradores al disponer: "obrero", "empleado", o "trabajador" no incluirá, sin embargo, "profesionales, ejecutivos y administradores". En igual forma, cuando la Legislatura quiso excluir a los administradores, ejecutivos y profesionales de los beneficios de otras leyes obreras, lo hizo mediante una disposición expresa similar a la que acabamos de transcribir, o sea, excluyéndolos expresamente de la definición de "obrero" o "empleado".

Sin embargo, la Legislatura nunca ha enmendado la Ley núm. 10 de 1917 con el propósito de excluir del término "empleado", a los ejecutivos, administradores o profesionales. Por lo tanto, las leyes en *pari materia* invocadas por la demandada-apelante indican mas bien que en ausencia de una disposición expresa de exclusión, el término "empleado" incluye a los ejecutivos, como el aquí apelado. Nada hemos encontrado en dichas leyes que indiquen que en un caso como el de autos, el demandante no pueda acogerse al procedimiento establecido en la Ley núm. 10 de 1917 para reclamar de su patrono los salarios y beneficios devengados bajo un contrato de arrendamiento de servicios. En su consecuencia, los primeros cinco errores no fueron cometidos.

▆▆ Por el sexto señalamiento de error se ataca la resolución del tribunal sentenciador declarando sin lugar la moción de "nonsuit" presentada por la apelante. Su contención es que la médula de la demanda está basada en que la demandada-apelante violó los términos del contrato despidiendo al demandante sin justa causa y que habiendo sido negado ese hecho y sosteniéndose por el contrario que el despido fué por justa causa, correspondía al demandante

probar que el despido fué sin justa causa, cosa que no hizo.

Este señalamiento descansa en una premisa errónea. La acción ejercitada por el demandante, una vez eliminadas ciertas alegaciones de la querella, era una en reclamación de salarios y beneficios devengados por el demandante hasta el día en que fué dejado cesante por la demandada-apelante y no una en reclamación por dicho concepto más los daños y perjuicios por los beneficios que dejó de recibir desde que fué dejado cesante y hasta el vencimiento del contrato. En este último caso tal vez podría tener algún mérito la contención de la apelante al efecto de que incumbía al apelado probar que el despido fué sin justa causa. Aquí le bastaba probar el tiempo que prestó sus servicios a la demandada-apelante y la compensación a que tenía derecho bajo las condiciones del contrato, hasta la fecha del despido. Ahora bien, el tribunal sentenciador concedió al demandante-apelado, la suma de $307.68 por concepto de dos semanas de vacaciones. De acuerdo con el contrato él tenía derecho a dos semanas de vacaciones con sueldo por año pero como no trabajó el año completo, las vacaciones deben ser proporcional al período de trabajo realizado por el demandante, o sea, a 9 meses con quince días. Esto es, desde junio 1 de 1955 a marzo 15 de 1956. La cantidad concedida por concepto de vacaciones debe por tanto ser reducida a la suma de $243.69.

■ Por el séptimo y último error se queja la apelante de aquella parte de la sentencia que le condena a poner a disposición del apelado, a razón de $3.50 cada una, 437 acciones comunes. Arguye que al comienzo del juicio el tribunal a quo había ordenado la eliminación de esa partida de la querella y que por lo tanto la misma no podía ser objeto de pronunciamiento en la sentencia. El error, de haberse cometido, no debe servir de base para revocar o modificar la sentencia apelada.

Una carta aclarando los términos del contrato de arrendamiento de servicio, escrita por la apelante al apelado y

admitida en evidencia sin objeción, establece fuera de duda que el derecho de opción a la compra de las referidas acciones, debía considerarse definitivamente como que era parte del sueldo del apelado. Además este hecho fué admitido en sus alegaciones por la apelante. A ningún fin práctico conduciría devolver el caso para una nueva vista en relación con ese extremo, una vez que se permitiera al apelado enmendar su demanda para restablecer en ella la alegación que fué erróneamente eliminada por el tribunal. Bien puede considerarse que dicha demanda quedó enmendada por la prueba presentada por el demandante-apelado y admitida sin objeción. Debemos en su consecuencia desestimar dicho señalamiento de error.

Por las razones expuestas *la sentencia apelada debe modificarse reduciéndose la suma concedida por concepto de vacaciones a $243.69 y así modificada debe confirmarse.*

■ Pasemos ahora a considerar el recurso interpuesto por el demandante contra la resolución dictada en el incidente sobre levantamiento de embargo.

En verdad el recurso carece de méritos. De conformidad con las alegaciones de la demanda, el tribunal a quo condenó en su sentencia a la demandada aquí apelada, a pagar al demandante la suma de $324.34 más $500 para honorarios de abogado y las costas. Le condenó además a entregar al demandante 437 acciones comunes o el valor de éstas en el mercado y a poner a disposición de dicho demandante a razón de $3.50 cada una, 437 acciones comunes adicionales. Como bien alega la demandada, la opción, según la sentencia, de entregar al demandante el indicado número de acciones o su valor en el mercado, correspondía a ella y no al demandante. Al convertirse en definitiva la sentencia, la demandada podía satisfacerla, entregando las indicadas 437 acciones comunes al demandante, poniendo a su disposición 437 acciones comunes adicionales para que éste ejercitara su opción de compra a razón de $3.50 cada acción, y pagándole además las sumas líquidas que se mencionan en la sentencia. Es obvio, por

tanto, que la efectividad de dicha sentencia quedaba asegurada, con el depósito en corte, y a disposición del demandante, sujeto desde luego a los resultados de la apelación interpuesta contra la sentencia, de las referidas acciones, además del embargo sobre bienes del demandado suficiente para cubrir las cantidades líquidas cuyo pago debía efectuar la demandada, así como las costas. Si bien la Ley para Asegurar la Efectividad de las Sentencias (32 L.P.R.A., secs. 1069–1084) dispone que si la obligación reclamada fuere de dar cosa determinada poseída por el demandado o por un tercero a su nombre, se prohibirá al demandado, o al tercero en su caso, la enajenación o gravamen de la cosa reclamada, hasta la resolución del pleito, no es menos cierto que el depósito judicial de la cosa reclamada cumple más a cabalidad aún, los fines del aseguramiento. *Consideramos por tanto, que el tribunal a quo no cometió error al dictar la resolución apelada, por lo que la misma debe ser confirmada.*