ALEJANDRO BONET MARTÍNEZ ET AL., demandantes y recurridos, *v.* AUTORIDAD DE TIERRAS DE PUERTO RICO, demandada y recurrente.

*Número:* 516          *Resuelto:* 31 de mayo de 1963

460

*Alejandro Romanace, José E. Franco Santiago, Osvaldo de la Cruz Vélez, Gustavo de Pedro* y *Carlos Chavier Stevenson*, abogados de la recurrente; *G. R. Padró Díaz*, abogado de los recurridos.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Como parte de la reforma agraria iniciada en 1941 dirigida principalmente a erradicar los males del absentismo y el latifundismo e inspirada en la declaración fundamental de que la tierra de Puerto Rico ha de ser considerada como "fuente de vida, de dignidad y de libertad para los hombres y mujeres que la trabajan," la Asamblea Legislativa incluyó en la Ley de Tierras, Núm. 26 de 12 de abril de 1941 (Leyes, pág. 389) el novedoso programa de fincas de beneficio proporcional. [1] En la Exposición de Motivos de la mencionada ley se dijo: "No estaría completa esta política pública fundamental si no estuviera acompañada, como corolario germano a su naturaleza y a su alcance, del propósito, de proveer que en aquellos terrenos donde, por razones naturales y económicas, la

---

[1] No se discute la importancia de este programa para la implementación de la política legislativa sobre la tenencia de tierras. "No constituye una exageración el afirmar que las fincas de beneficio proporcional constituyen la llave de la política agraria de la Legislatura de Puerto Rico. El éxito o fracaso del programa de tierras gira alrededor de estas unidades agrícolas." Concepción de Gracia, G., *The Land Authority of Puerto Rico*, 12 Geo. Wash. L. Rev. 302, 320-321 (1944).

Según información obtenida del alegato de la recurrente, hay en la actualidad 63 fincas de beneficio proporcional con un área total de 28,989 cuerdas. Por concepto de beneficios, y en adición a los salarios anticipados por $97,416,978.13, hasta 1961 se había distribuido entre los trabajadores la suma de $7,292,417. 98.

división de la tierra no fuese aconsejable en términos de eficiencia, pueda sin embargo producirse la mayor difusión posible de los beneficios económicos de la tierra, llegando éstos a levantar sustancialmente el nivel de vida del mayor número posible de familias; y es con vistas a esta modalidad del propósito legislativo que se considera indispensable proveer para la creación de Fincas de Beneficio Proporcional en las que la difusión de la riqueza pueda ser alcanzada, hasta donde la eficiencia así lo aconseje, sin la división de la tierra." (Pág. 399.)

El Título Cuarto de la Ley de Tierras, que comprende los Arts. 64 a 73, 28 L.P.R.A. secs. 461 a 463 y 481 a 491, está dedicado a las fincas de beneficio proporcional. En esencia consiste de un programa de utilización de los fundos en el cual lo que se divide no son las tierras sino los beneficios derivados de su explotación. En términos generales, se autoriza a la Autoridad de Tierras a ceder en arrendamiento predios de cien a quinientas acres, y en el caso de que una mayor eficiencia en la producción lo requiera, en extensiones mayores de quinientas acres, a agricultores, agrónomos y otras personas prácticas en administración agrícola, que son seleccionadas estrictamente a base de méritos.[2] El canon anual de arrendamiento será lo suficiente para cubrir en cuarenta años el precio pagado por la finca por la Autoridad más el interés anual que se determine sobre el balance no amortizado al comienzo de cada año,[3] pero el arrendatario no responderá personalmente del pago del canon estipulado. Las fincas operarán en el número de subdivisiones administrativas que a juicio de la Autoridad deban establecerse con miras a lograr una explotación más eficiente y una distribu-

[2] Para los requisitos del administrador y el sistema de selección, véanse los Arts. 1 y 2 del Reglamento para Fincas de Beneficio Proporcional, aprobado por el Gobernador en 15 de noviembre de 1944, según enmendado en 3 de diciembre de 1948, 28 R.&R.P.R. secs. 461–1 y 461–2.

[3] Artículo 65(k), 28 L.P.R.A. sec. 463(k) y Art. 4 del Reglamento, 28 R.&R.P.R. sec. 461–4.

ción más equitativa de los beneficios producidos por la empresa, pero si cualquier unidad administrativa sufriera pérdidas éstas serán absorbidas por las demás unidades de dicha finca que hayan obtenido beneficios. Se garantiza en concepto de anticipo a los obreros que trabajen en las fincas el jornal o salario prevaleciente en la región o que hubiese sido estipulado por las leyes estatales o federales o por convenio colectivo, *Tulier* v. *Autoridad de Tierras*, 70 D.P.R. 267 (1949), responsabilizándose personalmente al administrador de cualquier reclamación por parte de los trabajadores como consecuencia de la violación de este precepto,[4] y se dispone que cada trabajador tendrá derecho, en una fecha o fechas anuales estipuladas a recibir una proporción de los ingresos netos de la finca en proporción a los jornales o salarios que haya devengado como anticipo por su trabajo en dicha finca.[5] Cobra así palpitante realidad la distribución de los frutos de la tierra a aquellos que la cultivan y trabajan.

Resulta, pues, de cardinal importancia señalar la forma en que se computan los ingresos netos de la finca. El Art. 70 de la Ley, 28 L.P.R.A. sec. 485, y el Art. 23 del Reglamento, 28 R.&R.P.R. sec. 461–23, al efecto disponen que se determinarán por cosechas, y que se descontarán los siguientes cargos de los ingresos brutos de cada cosecha: 1—los cánones de arrendamiento; 2—las contribuciones; 3—los jornales o salarios satisfechos a los trabajadores en concepto de anticipos; 4—los gastos de materiales y de funcionamiento; 5—la depreciación de las mejoras corrientes que hayan sido autorizadas por la Autoridad; 6—los intereses de la deuda de refacción; 7—las cuotas de indemnizaciones a obreros; 8—el por ciento de los ingresos brutos que determine la Autoridad para gastos de supervisión, contaduría y educación

---

[4] Artículo 12 del Reglamento, 28 R.&R.P.R. sec. 461–12.

[5] Cf. con el concepto de "patrocinio" que informa la relación existente entre las cooperativas y sus socios, Art. 2(g) de la Ley Núm. 291 de 9 de abril de 1946, según enmendada, 5 L.P.R.A. sec. 882(g).

cooperativa (en el Reglamento se fija el 4% de los ingresos brutos para gastos de contaduría y educación cooperativa, pero no se mencionan los gastos de supervisión); 9—el costo por el uso de maquinarias, animales, implementos y útiles de labranza; y, 10—finalmente, desde la aprobación de la Ley Núm. 3 de 28 de septiembre de 1954 (Leyes, pág. 37), la prima que la Autoridad determine para garantía refaccionaria, a que se refiere el inciso (1) del Art. 65, 28 L.P.R.A. (Supl. 1962) sec. 463.([6])

El texto original del Art. 70 de la Ley de Tierras incluía "el fondo de reserva que determinare la Autoridad" entre los cargos a descontarse para determinar los ingresos netos de una finca de beneficio proporcional (Leyes, 1941, págs. 389, 451). Por la Ley Núm. 197 de 11 de mayo de 1942 (Leyes, págs. 997, 1013) se le adicionó un disponiéndose al efecto de que "siempre que, en opinión de la Autoridad de Tierras el fondo de reserva excediere de una suma prudente y necesaria, la Autoridad podrá distribuir dicha suma en exceso en la misma proporción que otros beneficios se distribuyen de acuerdo con esta ley." Un año después, mediante la Ley Núm. 50 de 9 de mayo de 1943 (Leyes, pág. 121) se elimina esta reserva como un cargo contra los ingresos brutos, y se autoriza la creación del fondo de reserva de los beneficios netos producidos por las fincas. De ahí que el Art. 24 del Reglamento, 28 R.&R.P.R. sec. 461–24, dispusiera que "[l]os ingresos netos de la finca de beneficio proporcional serán repartidos en la siguiente forma: del 1 al 15% para el arrendatario según se determine en el contrato; el por ciento que la Autoridad estime razonable para crear un fondo de reserva y el remanente entre los obreros y emplea-

---

([6]) "(1) Que el arrendatario pagará a la Autoridad la prima que la Autoridad determine para garantizar a ésta el pago de cualquier cantidad tomada a préstamo por la finca a la Autoridad, o, sirviendo la Autoridad como garantizadora, a cualquier entidad pública o privada, para fines de refacción agrícola y molienda de sus cañas."

dos de la finca en proporción a los salarios y jornales devenga-
dos por ellos en el cosecho [*sic*] del año."

No hay disposición alguna en la Ley o en el Reglamento
que indique los propósitos para los cuales se estableció la
reserva mencionada. Sin embargo, al sustituirse en 1954
este sistema de reserva por el pago de una prima denominada
para "garantía refaccionaria," se puede colegir que el obje-
tivo fundamental de la reserva era cubrir las pérdidas que
pudieran originarse en la explotación de cada finca de bene-
ficio proporcional. Hasta entonces la Autoridad asumía las
pérdidas que resultaran de la explotación de cada finca, a
menos que la misma tuviera alguna cantidad acreditada como
reserva en años anteriores que fuera suficiente para cubrirla.
Es preciso aclarar que se trata de una reserva en la conta-
bilidad de cada finca y no de una reserva de fondos para todas
las fincas. Durante la discusión del P. de la C. 1260, que
se convirtió luego en la Ley Núm. 3 de 28 de septiembre de
1954, el portavoz de la mayoría parlamentaria Senador Gutié-
rrez Franqui señaló que "Esta enmienda tiene por propósito
que todas, todas las fincas, las que producen beneficio y las
que producen pérdidas, contribuyan a un fondo de seguro
común contra déficits de refacción. De manera que al hacerse
la liquidación anual, las primas pagadas por aquéllas que
tuvieran beneficio más las primas pagadas por aquéllas que
tuvieran déficits, vayan a enjugar el déficit de refacción de
aquéllas que tuvieran un balance desfavorable en sus opera-
ciones, ayudadas por las primas pagadas por aquéllas que
no necesitan de esa ayuda, por haber obtenido beneficio en
sus operaciones. De manera que, es cierto, que esto es un
cargo adicional que se impone a las fincas, pero es para en-
jugar pérdidas de aquéllas que las tengan y que esas pérdidas
no vayan a gravar el fondo general de la Autoridad de Tie-
rras." (7) A través de todo el debate se caracterizó el cargo
de la prima que venía a sustituir el fondo de reserva como

---

(7) *Diario de Sesiones,* 1954, vol. V, pág. 252.

"un programa de seguros contra pérdidas de refacción." (⁸)
Y específicamente añadió el senador Gutiérrez Franqui, contrastando los dos sistemas, ". . . actualmente a ese agricultor que tiene beneficios [se refiere a la finca de beneficio proporcional], se le obliga por los reglamentos y por la ley, a contribuir a un fondo de reservas y ese es un cargo que tiene del dinero que va a ese fondo de reserva, y por tanto esta disposición lo que hace es que, en vez de ir al fondo de reserva donde está muerto, él no va a tener ningún gasto adicional en su operación del año que viene, sino que es una operación de contabilidad que en vez de hacer el cargo ese para un fondo de reserva donde eso queda muerto ahí para el día que él tenga pérdidas, y si es el agricultor que pinta el compañero que nunca las tiene, eso lo que es un fondo de reserva que va acumulando ahí muerto en los libros sin ninguna utilidad social," (⁹) Puede afirmarse, por tanto, que el propósito de la reserva autorizada hasta 1954 fue para afrontar cualquier pérdida en la operación de la finca, y probablemente otras contingencias—como reclamaciones de salarios—cuya existencia se ignora a la terminación de cada cosecha. Así lo corrobora plenamente el entonces Secretario de Agricultura señor Colón Torres en un memorando que dirigió en 9 de abril de 1954 al Gobernador de Puerto Rico explicando los alcances del proyecto:

". . . Desde que la Autoridad de Tierras comenzó su programa de Fincas de Beneficio Proporcional que han tenido pérdidas han acumulado un déficit de $1,605,707.00. Este déficit ha venido a ser una pérdida para la Autoridad por las razones ya antes mencionadas. Es cierto que las fincas que han tenido éxito en sus operaciones han acumulado una reserva por la suma de $1,768,261.00. Pero es igualmente cierto que las disposiciones actuales de la Ley de Tierras relativas a la acumulación de un fondo de reserva no autorizan el uso de estos fondos para enjugar pérdidas de Fincas que no han acumulado

(⁸) Id., págs. 253 y 257.
(⁹) Id., pág. 254.

reserva alguna. Creemos que no debe aplazarse por más tiempo la adopción de una medida, que garantice que la Autoridad no va a sufrir pérdidas como consecuencia de haber dado refacción agrícola, o de haber garantizado la refacción agrícola dada, a una Finca de Beneficio Proporcional que no ha tenido éxito en sus operaciones agrícolas."

La finca denominada "Pajuil", sita en los barrios Hato Arriba y Campo Alegre de Hatillo y Campo Alegre de Arecibo, fue organizada como una empresa de beneficio proporcional para el cultivo de cañas de azúcar en el año 1944, y como tal continuó operando haste 1955, en que cesó el cultivo de cañas y se dedicó al programa de piñas. Según información que aparece de la contestación a un interrogatorio los beneficios anuales de dicha finca que "ingresaron" en el fondo de reserva([10]) ascendieron hasta 1954 a la suma de $40,543.00, según se indica a continuación:

| | |
|------|------------|
| 1944 | $1,935.04 |
| 1945 | 1,584.31 |
| 1946 | 11,885.65 |
| 1947 | 1,646.64 |
| 1948 | 2,377.02 |
| 1949 | 10,543.04 |
| 1950 | 4,035.27 |
| 1951 | 2,856.54 |
| 1952 | 460.71 |
| 1953 | 2,036.55 |
| 1954 | 1,182.23 |

En 8 de diciembre de 1958, Alejandro Bonet, administrador de la finca Pajuil, 157 obreros y los beneficiarios de

---

([10]) En el contrato de administración otorgado por la Autoridad y el administrador Alejandro Bonet se convino que "Del ingreso neto según se determina en la cláusula Trigésimosétima, la Finca separará el por ciento que la Autoridad juzgue prudente y razonable para constituir *la reserva para contingencias* de la Finca. El Administrador no tendrá derecho alguno en la reserva para contingencias así creada."

9 trabajadores fallecidos ([11]) incoaron una acción civil contra la Autoridad de Tierras y la Finca de Beneficio Proporcional Pajuil, en reclamación de las cantidades que respectivamente les correspondían en la reserva mencionada. En el acto de una vista celebrada las partes estipularon los siguientes hechos adicionales: que la finca Pajuil se dedica temporalmente a la siembra de piñas, y puede ser "reactivada" en el futuro como finca de beneficio proporcional, y que los fondos que integran la reserva pertenecen a los obreros que laboraron dicha finca durante los años 1944 a 1955. La posición de la Autoridad es que, aun reconociendo que el fondo de reserva pertenece a los trabajadores y no obstante haber sido suplantado posteriormente por el sistema de garantía refaccionaria mediante el pago de una prima anual, ella no viene obligada a su devolución por no haber disposición legal alguna que así lo exija, y que, por tanto, compete a la agencia determinar a su arbitrio el momento para la entrega de los fondos.

El tribunal de instancia, después de emitir una bien razonada opinión, dictó sentencia ordenando a la Autoridad de Tierras a liquidar, repartir y entregar a los demandantes la participación que conforme a la Ley de Tierra les corresponde en el fondo de reserva de la finca Pajuil. Acordamos revisar dicha sentencia. Tres errores apunta la parte recurrente: 1—que la sentencia constituye una intervención indebida del poder judicial ya que no fue la intención legislativa al aprobar la Ley Núm. 3 de 28 de septiembre de 1954, *supra*, que se repartieran los fondos de reserva de las fincas de beneficio proporcional; 2—íntimamente relacionado con el anterior, que fue errónea la interpretación del tribunal recurrido al efecto de que la ley mencionada autorizó implícita-

---

([11]) El Art. 72-A adicionado por la Ley Núm. 108 de 7 de mayo de 1948 (Leyes, pág. 389), 28 L.P.R.A. sec. 488, provee para la designación de beneficiarios para el caso de muerte o incapacidad de los obreros, a los fines de que dichos beneficiarios reciban las cantidades que se le adeuden al obrero por concepto de salarios o jornales devengados como anticipo por su trabajo, subsidios, *beneficios no repartidos* o pago de cualquier diferencial.

mente la distribución de los fondos acumulados hasta la fecha de su aprobación; y, 3—que es igualmente errónea la determinación de que los fondos de reserva son innecesarios. Por la relación que guardan entre sí, los errores deben discutirse conjuntamente.

No constituye tarea fácil disponer de este asunto, pues las posiciones asumidas por ambas partes son admisibles dentro de un riguroso proceso hermenéutico dependiendo de la regla de interpretación que en definitiva se desee seleccionar como la norma adecuada y aplicable. Tampoco se allana el camino cuando en esencia está envuelta de una parte, una agencia que administra una política pública con miras a obtener una mayor utilidad social, y de la otra, un grupo de trabajadores que reclaman parte de los frutos habidos como consecuencia del éxito de ese programa de reivindicación agraria. No obstante, en esta ecuación hay dos factores conocidos de importancia decisiva: 1—la atribución del fondo a los obreros, y, 2—el propósito que animó la creación de la reserva.

En cuanto a la propiedad del fondo, es altamente significativo que inicialmente la reserva constituyera un gasto para ser descontado de los ingresos brutos de la finca, como los cánones de arrendamiento y las contribuciones territoriales. Dos años después deja de ser un simple gasto de operación, y se detrae de los beneficios netos, que son los que por disposición de ley deben distribuirse a los trabajadores anualmente en proporción a los jornales o salarios que hubieren devengado como anticipo. Ello revela un claro propósito legislativo—en armonía con la política pública de que los frutos de la tierra correspondan a quienes la trabajan—de que estos fondos pertenecen a los obreros y están sujetos a distribución cuando desaparezca la necesidad que determinó su separación. Así se explica mejor la disposición introducida por la Ley Núm. 197 de 11 de mayo de 1942, *supra*, que se conservó hasta 1954, al efecto de que "siempre que, en opinión de la Autoridad de Tierras, el fondo de reserva excediere de una suma

prudente y necesaria, la Autoridad podrá distribuir dicha suma en exceso en la misma proporción que otros beneficios se distribuyen de acuerdo con esta Ley." (12) Es por eso que al disponer por venta de una de las fincas de beneficio proporcional, la finca Reparada, la Autoridad distribuyó entre los obreros el fondo de reserva acumulado en la operación de dicha finca.

Tampoco cabe la menor duda de que el propósito de la creación del fondo de reserva fue afrontar las contingencias que pudieran surgir en la explotación agrícola de las fincas, y específicamente las pérdidas en determinada cosecha. Debe recordarse a este respecto que el Art. 73 de Ley, 28 L.P.R.A. sec. 491, instruye a la Autoridad para que haga prevalecer el propósito de que la administración de estas fincas sea lo más similar posible a la administración de fincas privadas en todo cuanto no se refiera a la distribución de beneficios. Es innegable que en los negocios particulares estos fondos de reserva se crean para la eventualidad de la ocurrencia de pérdidas en años subsiguientes. Además, como hemos previamente apuntado, la agencia asumía las pérdidas anuales de cada finca en particular, y previsoramente, mediante la reserva intentó protegerse de esta contingencia. Sin embargo, en la práctica la medida precautelar no resultó todo lo satisfactoria que se intentaba ya que aparentemente la reserva se acumuló en relación con fincas que generalmente no sufrían pérdidas, mientras que las que tenían una operación desfavorable no disponían de un fondo acumulado para cubrir las pérdidas incurridas. Precisamente por este motivo se sustituyó el sistema por el del pago de un seguro para la refacción, al que contribuyen tanto las fincas que obtienen bene-

---

(12) En el curso del debate del P. de la C. 1260, el senador Dávila Díaz, Presidente de la Comisión de Agricultura del Senado, al referirse a los fondos de reserva, dijo: "Esos fondos de reserva son de esa finca. Cuando se vayan a repartir hay que repartírselos a esos obreros, *porque son de ellos." Diario de Sesiones*, 1954, tomo V, pág. 262.

ficios como las que incurren en pérdidas, y cuya cuota se calcula sobre el importe de la refacción. ([13])

■ La finca Pajuil ha estado inactiva en el programa de fincas de beneficio proporcional desde hace nueve años. A la terminación de sus operaciones en la siembra de cañas la reserva ascendía a $40,543.00. No tuvo pérdidas durante su explotación pues según aparece anteriormente en esta opinión desde 1944 se fue nutriendo el fondo de reserva hasta 1954, cantidades que se detrajeron de los beneficios netos obtenidos, y que fluctuaron entre $11,885.65 en el año de su ganancia óptima hasta $460.71 en el año de su menor rendimiento. No se adujo que existiera contingencia alguna pendiente de determinación. No es probable que a esta fecha puedan incoarse reclamaciones de salarios, en ausencia de una interrupción del período prescriptivo, ya que las labores cesaron desde 1955. De todas formas, de existir alguna contingencia que impidiera disponer del fondo, correspondía a la recurrente levantar la cuestión como defensa. ([14]) Por otro lado, desde que se estableció el sistema de garantía refaccionaria el fondo de reserva resulta innecesario. En el memorándum previamente citado el Secretario de Agricultura informa al Gobernador que "Una vez establecido este nuevo sistema de garantía refaccionaria, resulta innecesario continuar en vigor las

---

([13]) Según información extraoficial obtenida, la prima que se carga es de .0262 por ciento sobre el balance mensual de la cuenta corriente de cada finca.

([14]) Tampoco se planteó defensa alguna invocando las disposiciones del Art. 72-C adicionado a la Ley de Tierras por la Núm. 120 de 27 de abril de 1949, según enmendada por la Núm. 131 de 27 de junio de 1958, 28 L.P.R.A. (Supl. 1962) sec. 490, que prescribe que: "Toda acción contra la Autoridad de Tierras y/o sus corporaciones subsidiarias y/o las Fincas de Beneficio Proporcional por trabajadores u obreros en cobro de beneficios proporcionales prescribirá una vez transcurridos 3 años. El tiempo para la prescripción de tales acciones se contará desde el día en que dichos beneficios sean declarados por la Junta y publicados en dos diarios de circulación general de Puerto Rico."

Si esta disposición es aplicable a acciones en reclamación de beneficios detraídos para ser ingresados en un fondo de reserva, *quaere.*

actuales disposiciones del Art. 70 de la Ley de Tierras relativas a la acumulación de fondos para fines de reserva, ya que la Autoridad estará entonces en condiciones de absorber cualquier pérdida que sufra una Finca, y, en su consecuencia, desaparecerá la necesidad de que las Fincas acumulen reserva alguna." Así lo expresó además el Presidente de la Comisión de Agricultura del Senado en el debate sobre la medida: "Entonces, de ahora en adelante, después que se apruebe este proyecto, como se garantiza la refacción, no habrá necesidad de fondo de reserva." ([15])

■ Resulta, por tanto, meridianamente claro que de acuerdo con lo estipulado y lo expresado anteriormente a) el fondo de reserva de la finca Pajuil pertenece a los trabajadores; b) no existen actualmente reclamaciones contra el fondo; y, c) en caso de reactivarse la finca dentro del programa de fincas de beneficio proporcional, la reserva sería innecesaria. Ello nos lleva inevitablemente a la conclusión de que el balance existente en dicho fondo debe ser distribuido entre los trabajadores.

■ El segundo aspecto de este recurso se refiere al término para la devolución a los beneficiarios de su participación en el fondo de reserva. No existe precepto alguno en la ley que en forma expresa o implícita cubra esta situación. La Autoridad destaca prominentemente ciertas manifestaciones del Senador Susoni durante el debate para fundamentar su posición de que puede retener los fondos hasta que en su discreción lo estime apropiado y conveniente. Dijo dicho legislador refiriéndose a los fondos de reserva: "Es una cuestión de contabilidad. La Autoridad de Tierras contabiliza eso por finca, pero la ley lo determina *por fondos de la Autoridad*. En la forma en que lo contabilice la Autoridad, es una cosa distinta y estoy de acuerdo con el compañero, si así lo dice es así, pero el hecho de que la Autoridad lo contabilice

([15]) *Diario de Sesiones*, 1954, vol. V, pág. 258.

por finca, no la autoriza, al final del contrato de arrenda-
miento, *a devolverle esas cantidades acumuladas por estos
conceptos.*"([16]) Sin embargo, esta manifestación no puede
considerarse aisladamente, porque se basan en la apreciación
de que el fondo de reserva pertenece a la Autoridad, y no a
los trabajadores según se ha admitido en el presente pleito.
Precisamente, segundos antes el Senador Susoni había dicho:
"No hay nada más pendiente, porque la ley no determina,
en ninguna disposición, el que esos fondos así acumulados,
al terminar el contrato de arrendamiento les sean revertidos,
*porque forman parte de un fondo de la Autoridad, no es de
la finca de beneficio proporcional.*"([17])

Como el fondo se creó por autorización expresa de la
Asamblea Legislativa, lo natural es que el término para su
distribución a los trabajadores a partir de la fecha en que
se descontinúa la operación de una finca dentro del programa
de beneficio proporcional se hubiese fijado por ley. Pero apa-
rentemente este problema no se vislumbró durante la redac-
ción, discusión y aprobación de la medida que en definitiva
tuvo el efecto de descontinuar la acumulación de reserva.
Ello no quiere decir que en ausencia de una actuación legis-
lativa, los tribunales estén inhabilitados para actuar, pues
tratándose de una obligación, que en este caso emana de la
ley misma, su cumplimiento no puede dejarse al arbitrio ex-
clusivo de la parte obligada, y corresponde a éstos, considera-
das todas las circunstancias, fijar el plazo que se estime
razonable. El tribunal de instancia indicó que "seis años es
más que razonable . . . para dar cumplimiento a la obligación
contraída," mas para ello no oyó prueba sobre los distintos
factores que pueden tener pertinencia a los fines de hacer la
determinación que corresponda. La disponibilidad inmediata

---

([16]) Id., pág. 263.

([17]) Id., pág. 262.

de los fondos, ([18]) el tiempo que toma la preparación de la relación de beneficiarios y la determinación del beneficio que proporcionalmente corresponde a cada uno, la tramitación de los casos en que los beneficiarios han fallecido o se han incapacitado, y otras que de momento pueden escaparse, son circunstancias que deben considerarse a los fines de la fijación de un plazo que, tomando en cuenta que se trata de cantidades a que tienen derecho humildes obreros que labran la tierra, no resulte en perjuicio para el programa público que desarrolla la Autoridad de Tierras de Puerto Rico.

*Se dejará sin efecto la sentencia dictada por el Tribunal Superior, Sala de Arecibo, en 28 de abril de 1961, y se devolverá el caso al tribunal de instancia a los fines de que celebre una vista y reciba prueba en cuanto a la fijación del plazo razonable para la devolución del fondo de reserva a los demandantes recurridos.*

El Juez Presidente, Señor Negrón Fernández aunque está de acuerdo con los pronunciamientos de la opinión disiente en cuanto a la disposición del caso por entender que procede la confirmación de la sentencia.

---

([18]) Juiciosamente la Autoridad ha estado utilizando los fondos para refaccionar las mismas fincas de beneficio proporcional, evitando así con toda probabilidad cargos mayores por concepto de intereses y el pago de una cuota más elevada dentro del programa de garantía refaccionaria. (*Diario de Sesiones*, 1954, vol. V, pág. 262, y pág. 17 del alegato de la recurrente.)

En su alegato suplementario presentado por la recurrente se plantea que el fondo de reserva corresponde a la Autoridad y no a los obreros. No podemos convenir con esta posición por los fundamentos expuestos en el curso de esta opinión, y porque, además, ante el tribunal de instancia y hasta ahora la recurrente había aceptado expresamente que dicho fondo pertenecía a los trabajadores de la finca Pajuil. Su invariable conducta en relación con las reservas también lo confirma.