# 2006 DTA 81

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE CAROLINA**

JULIO FERMÍN CARCAÑO
Querellante-Apelante

v.

PAUL CARROLL H/N/C, RESTAURANTE ZABÓ
Querellado-Apelado

Núm. KLAN-05-00667

San Juan, Puerto Rico, a 8 de mayo de 2006

Panel integrado por su Presidenta, la Juez Cotto Vives,
y los Jueces Aponte Jiménez y Morales Rodríguez

Cotto Vives, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Julio Fermín Carcaño nos solicita que revoquemos una sentencia emitida por el Tribunal de Primera Instancia, Sala de Carolina, el 29 de abril de 2005. En la referida sentencia, el tribunal a *quo* declaró con lugar la demanda por despido injustificado, desestimó todo lo relacionado con la alegación por discrimen por origen y ordenó el pago al empleado de la compensación correspondiente, según lo dispone la Ley 80 de 30 de mayo de 1976, 29 L.P.R.A. sec. 185ª. Además, determinó que el apelante es empleado exento y que le eran de aplicación las disposiciones del Reglamento 13, razón por la cual no le concedió compensación alguna por concepto de horas trabajadas en el período de tomar alimentos y horas extras.

Por los fundamentos que a continuación expondremos, modificamos la sentencia apelada y, así modificada, se confirma.

### I

El 7 de agosto de 2002, el empleado Julio Fermín Carcaño (en adelante, Fermín Carcaño) presentó una querella por despido injustificado contra su patrono Paul Carroll h/n/c Restaurante Zabó. En la referida querella, el señor Fermín Carcaño alegó que fue despedido sin justa causa por la parte querellada y reclamó el pago de unas horas extras alegadamente trabajadas y no compensadas. Además reclamó su derecho a la mesada al amparo de la Ley 80, *supra*, así como daños y perjuicios por alegadamente haber sido discriminado por razón de su origen nacional.

El 16 de septiembre de 2002, Zabó presentó una *Moción Solicitando Desestimación y Contestación a*

*Querella*; en ésta solicitó que se desestimara la querella en contra del coquerellado Paul Carroll (en adelante, Carroll), ya que el patrono del apelante lo era el Restaurante Zabó, Inc. (en adelante, Zabó), una corporación doméstica autorizada a hacer negocios en Puerto Rico. El 22 de septiembre de 2002, Fermín Carcaño presentó una *Moción en Oposición a Solicitud de Desestimación y Para que se Enmiende el Epígrafe*, en la que indicó no tener objeción a que se enmendara el epígrafe de la querella para que Zabó apareciera como querellado. Sin embargo, se opuso a que se desestimara la querella en contra del coquerellado Carroll, debido a que las alegaciones sobre daños basadas en conducta discriminatoria por origen nacional fueron hechas contra éste en su carácter personal y como administrador de Zabó.

El 31 de octubre de 2002, el TPI, mediante orden, denegó la solicitud de desestimación de Carroll, admitió la contestación a la querella de Zabó, señaló una conferencia sobre estado de los procedimientos para el 18 de noviembre de 2002 y ordenó enmendar el epígrafe. Posteriormente, a solicitud de Zabó, el tribunal a *quo* dispuso que se tramitara el caso por la vía ordinaria y no por el procedimiento sumario de la Ley 2 de 17 de octubre de 1961, 32 L.P.R.A. sec. 3118 *et seq.*

El 30 de octubre de 2003, Fermín Carcaño solicitó permiso para enmendar la querella a los efectos de incluir una reclamación por horas extras trabajadas durante el período de tomar alimentos que no fueron pagadas por el patrono. Zabó se opuso a dicha solicitud. El 2 de diciembre de 2003, el TPI autorizó la enmienda a la querella.

Luego de varios trámites procesales relacionados con el descubrimiento de prueba, se celebró la vista en su fondo. En la misma, se presentaron los testimonios del señor Carroll, co-dueño del restaurante; la señorita Yazmar Martínez Montalvo, Gerente de Recursos Humanos; el señor Jorge Silva, Gerente; y el apelante, -señor Fermín Carcaño-. Además, las partes estipularon y admitieron una serie de documentos en evidencia. Una vez desfilada la presentación de la prueba documental y testifical, el TPI ordenó la desestimación de la causa de acción por discrimen por razón de origen nacional. Conforme lo ordenado en la vista en su fondo, el 29 de septiembre de 2005, Zabó presentó una moción y un memorial en cumplimiento de orden en torno a la controversia relacionada con el hecho de si Fermín Carcaño era o no un empleado exento.

Así las cosas, el 29 de abril de 2005, el TPI emitió la sentencia apelada en la que declaró con lugar la demanda por despido injustificado, desestimó todo lo relacionado con la alegación por discrimen por origen nacional y ordenó el pago de la compensación correspondiente al empleado, según lo dispone la Ley 80, *supra*. Además, determinó que el apelante es empleado exento y que le eran de aplicación las disposiciones del Reglamento 13 de la Junta de Salario Mínimo de Puerto Rico, razón por la cual no le concedió compensación alguna por concepto de horas trabajadas en el período de tomar alimentos y horas extras.

El 8 de junio de 2005, Fermín Carcaño presentó el recurso de revisión que nos ocupa. Luego de varios incidentes procesales, el 2 de agosto de 2005, Zabó presentó una moción de desestimación, por alegado incumplimiento de la parte apelante con varias disposiciones reglamentarias. Dicha moción fue denegada por este Tribunal el 11 de octubre de 2005.

Inconforme con la determinación del TPI del 29 de abril de 2005, Carcaño acude ante nos mediante el presente recurso, en el que alega la comisión de los siguientes errores:

"*1. Erró el Tribunal al no establecer el monto de la mesada adjudicada.*

*2. Erró el Tribunal al no conceder los honorarios de abogado que estatutariamente están establecidos en casos como este.*

*3. Erró el Tribunal al no establecer el momento en que el obrero reclamante, dejó de ser empleado regular*

*para convertirse en obrero exento bajo el Reglamento 13 de la Junta de Salario Mínimo.*

*4. Erró el Tribunal al entender que las funciones realizadas por el obrero reclamante son las que requiere el Reglamento 13 y la jurisprudencia aplicable para labores exentas.*

*5. Erró el Tribunal al desestimar todo lo relacionado con la alegación de discrimen por razón de origen, cuando existía una presunción establecida por la ley y por la jurisprudencia, y la misma no fue rebatida."*

Contando con el beneficio de la transcripción de la prueba oral, así como con el alegato de la parte apelada, procedemos a resolver el recurso en sus méritos.

## II

Primeramente, repasemos el derecho aplicable a esta controversia. La Ley 80, *supra*, confiere a todo empleado contratado sin tiempo determinado, que fuere despedido sin justa causa, el derecho a recibir de su patrono, además del sueldo que hubiera devengado, una indemnización correspondiente de uno a tres meses de sueldo, dependiendo del número de años de servicio del empleado, y una indemnización progresiva adicional equivalente a una semana de sueldo por cada año de servicio. 29 L.P.R.A. sec. 185a. Véase, además, *García v. Aljoma Lumber, Inc.*, 162 D.P.R. ___ (2004), **2004 J.T.S. 131**, a la pág. 58; *Santiago v. Oriental Bank & Trust*, 157 D.P.R. ___ (2002), **2002 J.T.S. 89**, a la pág. 1,287, n.7; *Díaz v. Wyndham Hotel Corp.*, 155 D.P.R. ___ (2001), **2001 J.T.S. 146**, a la pág. 260; *Irizarry v. J& J Cons. Prods., Co.,* Inc., 150 D.P.R. 155, 166, n. 10 (2000).

El Art. 2 de la referida ley establece varias situaciones que constituyen justa causa para el despido. 29 L.P.R.A. sec. 185b; Véase, además, *Rivera v. Pan Pepín, Inc.*, 161 D.P.R. ___ (2004), **2004 J.T.S. 68**, a la pág. 947; *S.L.G. Hernández-Beltrán v. TOLIC*, 151 D.P.R. 754, 778 (2000), n. 16; *García v. Darex P.R., Inc.*, 148 D.P.R. 364, 381, n.12 (1999). Estas causales no son taxativas. El Tribunal Supremo de Puerto Rico ha aclarado que el concepto de *"justa causa"*, bajo el estatuto, es dinámico y se nutre de múltiples y fluidas situaciones imposibles de prever. *Rivera v. Pan Pepín, Inc., supra*, a la pág. 948; *Jusino et als. v. Walgreens*, 155 D.P.R. ___ (2001), **2001 J.T.S. 154**, a las págs. 371-372; *Srio. del Trabajo v. G.P. Inds., Inc.*, 153 D.P.R. 223, 243 (2001); *Delgado Zayas v. Hosp. Int. Med. Avanzada*, 137 D.P.R. 643, 650 (1994); *Srio. del Trabajo v. I.T.T.*, 108 D.P.R. 536, 542-543 (1979).

La Ley 80, *supra*, aclara, sin embargo, que:

*"No se considerará despido por justa causa aquél que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento."* 29 L.P.R.A. sec. 185b. Véase, además, *Srio. del Trabajo v. G.P. Inds., Inc., supra*, a la pág. 244.

Dicha disposición legal establece una presunción de que el despido del empleado fue injustificado, correspondiendo al patrono rebatirla mediante preponderancia de evidencia. *Rivera v. Pan Pepín, Inc., supra*, a las págs. 947-948; *Díaz v. Wyndham Hotel Corp., supra*, a las págs. 261-262; *Belk v. Martínez*, 146 D.P.R. 215, 230-231 (1998); *Delgado Zayas v. Hosp. Int. Med. Avanzada, supra*, a la pág. 650.

## III

La Ley de Horas y Días de Trabajo, Ley 379 de 15 de mayo de 1948, según enmendada, 29 L.P.R.A. sec. 271 *et seq.*, es una ley de fijación de jornadas de trabajo que reconoce el derecho constitucional de todo obrero a recibir compensación extraordinaria por trabajo realizado en exceso de una jornada laboral de ocho horas diarias.

El Art. 2 de la referida ley dispone que la jornada legal diaria de trabajo en Puerto Rico es de ocho horas.

Además, también establece que la jornada semanal de trabajo la constituyen cuarenta horas de labor. Por esta razón, ocho horas durante cualquier día de trabajo y cuarenta horas, durante cualquier semana de trabajo, se consideran horas regulares de trabajo. Art. 3, Ley 379, *supra*, sec. 272.

El Art. 4 de dicha disposición legal establece que se considerarán horas extras, en lo pertinente:

*"(a) Las horas que un empleado trabaja para su patrono en exceso de ocho (8) horas durante cualquier período de veinticuatro horas consecutivas;*

*(b) Las horas que un empleado trabaja para su patrono en exceso de cuarenta (40) durante cualquier semana, a menos que las horas trabajadas diariamente en exceso de ocho sean pagadas a tipo doble.*

*(c) [...]*

*(d) Las horas que un empleados trabaja para su patrono durante el día de descanso que haya fijado o se fijase por ley en el caso de industrias y negocios que no están sujetos al cierre de un establecimiento, y las horas que un empleado trabaja para su patrono durante el día domingo en aquellos establecimientos comerciales que mantengan sus operaciones ese día y estén sujetos a las disposiciones de las secs. 301 et seq. de este título;...*

*(e) Las horas que el empleado trabaja para su patrono en exceso del máximo de horas de labor al día que la Junta de Salario Mínimo haya fijado o fijare para la ocupación, negocio o industria en cuestión.*

*(f) [...]. 29 L.P.R.A. sec. 273."*

A su vez, dicha ley establece que se considerarán y pagarán como horas extras las horas trabajadas durante el período reservado para el descanso o para tomar alimentos. Art. 5, Ley 379, *supra*, sec. 272a. En cuanto al referido período, indica que para conveniencia del empleado y el patrono, se puede fijar, por estipulación escrita de ambos y con la aprobación del Secretario del Trabajo, un período menor de una hora que no podrá ser menor de treinta minutos, excepto para *"croupiers"*, enfermeras (os) y guardias de seguridad, en cuyo caso, el tiempo no podrá ser menor de veinte minutos. Art. 15, Ley 379, *supra*, sec. 283.

La Ley 379, *supra*, establece que aquellas horas trabajadas en exceso de la jornada regular deberán ser compensadas al tipo de salario igual al doble del convenido para las horas regulares. Art. 6, Ley 379, *supra*, sec. 274. Así también, dicha ley dispone expresamente que aquel empleado que reciba una compensación menor a la debida para las horas regulares y horas extras de trabajo o para el período señalado para tomar alimentos tendrá derecho a recobrar de su patrono la cantidad adeudada por medio de una acción civil, así como una suma igual por concepto de daños y perjuicios, además de las costas, gastos y honorarios de abogado. Art. 14, Ley 379, *supra*, sec. 282. Véase, además, *Acevedo v. P.R. Sun Oil Co.*, 145 D.P.R. 752, 760 (1998).

Por otro lado, la Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad de Puerto Rico, Ley 180 de 27 de julio de 1998, 29 L.P.R.A. secs. 250 *et seq.*, en su Art. 8, 29 L.P.R.A. sec. 250f(b), establece que las disposiciones de dicho estatuto no serán aplicables a aquellos empleados clasificados como *administradores*, *ejecutivos* o *profesionales*, según dichos términos están definidos en el Reglamento 13 de la Junta de Salario Mínimo, Núm. 4267 de 29 de junio de 1990.

El inciso A del Art. IV del mencionado reglamento provee dos definiciones —una *"larga"* y otra *"corta"*— para cada uno de los términos *profesional, ejecutivo y administrador*. Dicho Reglamento, en su Art. III, define el término *"administrador"* como cualquier empleado:

*"a. que desempeñe trabajos de oficina o trabajos fuera de oficina que no sean de naturaleza manual, estando el trabajo directamente relacionado con las normas de la dirección de la empresa o con las operaciones generales del negocio del patrono o de los clientes del patrono; y*

*b. que usual y regularmente ejerza discreción y juicio independiente; y*

*c. 1- que regular y directamente ayude al dueño de la empresa, o a una persona empleada en la capacidad de "administrador" o de "ejecutivo", según estos términos se definen en el presente reglamento; o*

*2- que realice, solamente bajo supervisión general, trabajo de carácter técnico o especializado que requiera entrenamiento, experiencia o conocimientos especiales; o*

*3- que ejecute, solamente bajo supervisión general, encomiendas y tareas especiales; y*

*d. que no dedique más del 20%, o en el caso de un empleado de un establecimiento de comercio al detal o de servicio, que no dedique hasta el 40% de las horas trabajadas en una semana de trabajo, a actividades que no estén directa o estrechamente relacionadas con el desempeño del trabajo descrito en los Incisos (a), (b) y (c) de este Artículo III; y*

*e. que reciba por sus servicios una compensación fija o a base de por ciento u honorarios, equivalente a un sueldo semanal no menor de doscientos dólares ($200), excluyendo alimentos, vivienda u otros servicios.*

*f. también significa cualquier empleado cuyo trabajo cumpla con los requisitos dispuestos en los incisos (a) y (b) de este Artículo III y que reciba por sus servicios una compensación fija, o a base de por ciento u honorarios, equivalente a un salario semanal no menor de doscientos noventa y cinco dólares ($295), excluyendo alimentos, vivienda u otros servicios."*

Conforme dispone el subinciso (f) del artículo anterior, si un empleado recibe un salario semanal de $295 o más, sólo tendrá que cumplir con los requisitos impuestos por los subincisos (a) y (b) del citado inciso A del Art. III del Reglamento 13 para ser clasificado como administrador. A ésta se le conoce como la definición *"corta"* del término. De otra parte, la prueba larga requiere el cumplimiento de los seis requisitos establecidos en el Art. III del referido reglamento.

Sin embargo, la exclusión establecida por la Ley de Salario Mínimo, *supra*, para empleados ejecutivos y administradores resulta inaplicable a la Ley 80, *supra*. La norma en esta área, es que los estatutos laborales, por su carácter remedial, se interpretan de manera favorable a los trabajadores. *Rodríguez y otros v. Syntex, Inc.*, 160 D.P.R. ___ (2003), **2003 J.T.S. 145**, a la pág. 153; *León v. Rest. El Tropical*, 154 D.P.R. 249, 254 (2001); *Irizarry v. J&J Cons. Prods. Co.*, Inc., 150 D.P.R. a la pág. 164. Las exclusiones en los estatutos de esta naturaleza se aplican restrictivamente. Se exige que una exclusión sea clara, previo negar a un empleado el beneficio de una ley. Véase, *López Santos v. Tribunal Superior*, 99 D.P.R. 325, 330 (1970); *Doyle v. Polypane Packaging Co.*, 80 D.P.R. 224 (1958); *De Arteaga v. Club Deportivo*, 73 D.P.R. 444, 449 (1952).

En particular, el Tribunal Supremo de Puerto Rico ha resuelto que las exclusiones establecidas en la Ley de Salario Mínimo, *supra*, no son aplicables a casos de despido como el de autos. Véanse, *Hull Dobbs Co. v. Tribunal Superior*, 82 D.P.R. 77, 84-85 (1961); *Doyle v. Polypane Packaging Co.*, *supra*, a las págs. 228-230. Específicamente, en *Hull Dobbs Co. v. Tribunal Superior*, *supra*, a las págs. 84-85, el Tribunal Supremo de Puerto Rico señaló:

*"La disposición pertinente concede compensación a 'todo empleado de comercio, industria o cualquier otro negocio lucrativo, contratado sin tiempo determinado.' Al extender sus beneficios a todo empleado de un*

*negocio lucrativo el legislador no hizo distinción alguna entre las distintas clases de empleados, y por tanto, no se han excluido a los que ocupan cargos ejecutivos."*

La Asamblea Legislativa no ha introducido exclusión alguna en la Ley 80, *supra*, que tienda a privar a los empleados ejecutivos o administradores de la protección de dicho estatuto.

**IV**

Por estar relacionados los señalamientos de error uno y dos, los discutiremos conjuntamente. En su primer señalamiento de error, el apelante sostiene que la sentencia apelada no establece el monto de la mesada que le concede la Ley 80, *supra*, aun cuando el TPI determinó que su despido fue injustificado. Por otro lado alega, en su segundo señalamiento de error, que la sentencia tampoco indica el monto de las costas y los honorarios de abogado, no empece a que la referida ley provee para el pago de éstos por parte del patrono. Le asiste la razón en ambos señalamientos. Veamos.

El Art. 11 de la Ley 80, *supra,* establece que —además de la compensación a la cual tendría derecho el empleado—, el patrono deberá depositar en la Secretaría del Tribunal una cantidad para honorarios de abogado que nunca será menor del 15% del total de la compensación o $100, la que fuere mayor. 29 L.P.R.A. sec. 185k (b).

En el caso de autos, no empece a que el tribunal a *quo* en la sentencia apelada ordenó el pago al empleado de la compensación correspondiente al empleado en virtud de lo dispuesto en la Ley 80, *supra*, la realidad es que no estableció el monto de la misma. Tampoco le impuso al patrono el pago de honorarios de abogado, tal y como lo establece la referida ley.

De hecho, la parte apelada, en su alegato admite de manera tácita la comisión de dichos errores por parte del TPI. En su argumentación de los primeros dos señalamientos de error, Zabó alega que lo que procedía en este caso era que el apelante solicitara una enmienda *nunc pro tunc* de la sentencia apelada, a los efectos de que el tribunal a *quo* indicara el monto de la mesada que le corresponde a Fermín Carcaño y le impusiera a Zabó el pago de honorarios de abogado conforme lo establece la Ley 80, *supra*. Indica que esta era la acción que procedía en este caso por tratarse de errores de omisión y no de errores de derecho.

Por tanto, habiendo determinado el TPI en su sentencia que el despido de Carcaño fue injustificado, lo procedente era que dicho foro indicara el monto de la indemnización que le correspondía al empleado por ley. Así también, procedía que le impusiera a Zabó el pago honorarios de abogado, conforme lo establece la Ley 80, *supra,* la cual autoriza la imposición de éstos al patrono. Conforme lo anterior, resolvemos que los señalamientos de error uno y dos fueron cometidos por el tribunal a *quo.*

El tercer y cuarto señalamiento de error serán discutidos en conjunto por considerarlos estrechamente relacionados. En los referidos errores, el apelante alega que erró el TPI al no establecer el momento en que éste dejó de ser empleado regular para convertirse en obrero exento bajo el Reglamento 13 de la Junta de Salario Mínimo, *supra*, y al entender que las funciones realizadas por él son las que requiere dicho reglamento y la jurisprudencia aplicable para labores exentas.

En la discusión de los referidos errores, el apelante primeramente indica que no está de acuerdo con la determinación del TPI de que era un empleado exento de acuerdo con el Reglamento 13, *supra*. Sin embargo, más adelante señala que, de ser así, habría que establecer la fecha exacta en que pasó a ser un empleado exento, ya que, según él, la reclamación por horas de alimentos procedería entonces durante el tiempo anterior al cambio de clasificación. Le asiste la razón al apelante en cuanto a este segundo planteamiento, pero no en cuanto al primero.

Antes de pasar a discutir la controversia sobre la fecha exacta en que Fermín Carcaño se convirtió en un empleado exento, debemos determinar si, efectivamente, sus funciones caen dentro de la definición de administrador que provee el Reglamento 13 de la Junta de Salario Mínimo, *supra*. Veamos.

Al aplicarle a estos hechos los requisitos impuestos por el inciso A del Art. III del Reglamento 13, *supra*, podemos concluir que el señor Fermín Carcaño era un administrador, mientras se desempeñó como *"Sous Chef"* en el Restaurante Zabó. Además de las responsabilidades de Fermín Carcaño que fueron estipuladas por las partes —las cuales fueron incluidas por el TPI en su sentencia— de los testimonios vertidos en la vista, incluyendo el del propio apelante, surge que Carcaño, como *"Sous Chef"* tenía las siguientes responsabilidades:

*"1) Era una persona de confianza, encargado de abrir el restaurante.* ■

*2) Estaba a cargo del turno del día y era su responsabilidad asegurar que toda la comida —incluyendo la de las demás estaciones—, estuviese lista para servir a los clientes.* ■

*3) Encargado no solamente de su estación, sino de las demás estaciones de comidas.* ■

*4) Supervisaba el resto del personal de la cocina.* ■

*5) Responsable del control del inventario y de los gastos de la cocina.* ■

*6) Ejercía un grado de discreción como parte de sus funciones.* ■

*7) Era la mano derecha del señor Carroll, co-dueño del restaurante, y responsable ante él de todo lo ocurrido en la cocina.* ■

*8) Responsable de que toda la preparación de los platos y el restaurante estuviesen listos para abrir al público.* ■

*9) Responsable de manejar a los empleados y los productos para la comida.* ■

*11) Tenía discreción para la confección de nuevos platos, como por ejemplo, el especial del día.* ■

*12) Participación en la preparación de los menús."* ■

Por último, ya habíamos indicado que su salario quincenal como *"Sous Chef"* era de $925, cantidad que convertida a semanal excede los $295 semanales. En consecuencia, coincidimos con el TPI en que, de acuerdo con las funciones realizadas por Fermín Carcaño como *"Sous Chef"* del Restaurante Zabó, le es de aplicación la definición corta del término administrador, según definido dicho término en el Reglamento 13, *supra*. Las funciones del señor Fermín Carcaño como *"Sous Chef"* cumplen con los incisos (a) y (b) del Art. III del Reglamento 13, *supra*, además de cumplir con el requisito de salario. Por lo tanto, concluimos que el cuarto señalamiento de error no fue cometido por el tribunal a *quo*.

En cuanto al tercer señalamiento de error, hemos leído la sentencia apelada y nos percatamos de que si bien es cierto que el TPI, en la parte dispositiva, determinó que el empleado Fermín Carcaño es un empleado exento bajo las disposiciones del Reglamento 13, *supra*, la realidad es que no indicó a partir de qué fecha advino a serlo. A su vez, del expediente ante nos surgen contradicciones en las fechas suministradas —tanto por el tribunal a *quo* como por los testigos que declararon en la vista— sobre el momento en que Fermín Carcaño comenzó a fungir como empleado exento. Veamos.

En la determinación de hecho núm. 3 de la sentencia apelada, al detallar los aumentos de sueldo recibidos por Fermín Carcaño, el TPI indica el 16 de marzo de 2000 como la fecha cuando el apelante comenzó a devengar un salario de $925 quincenales. Luego, en la determinación de hecho núm. 4 añade que fue en esa misma fecha que el apelante comenzó con sus funciones de "*Sous Chef*". Más adelante, a la página 8 de la sentencia, el tribunal a *quo* concluyó que Fermín Carcaño ocupó la posición de "*Sous Chef*" desde febrero de 1998. ■ Dicha fecha también fue provista por la parte apelada en el *Memorial en Cumplimiento de Orden* en la página 12. No obstante, en su alegato, Zabó indica que, conforme al testimonio de Carroll, fue en diciembre de 1999 que el apelante se convirtió en empleado exento devengando un salario de $825 quincenales. ■ Sin embargo, al examinar el testimonio del Sr. Carroll nos percatamos que éste declaró que Fermín Carcaño comenzó a devengar un sueldo de $925 quincenales para el 16 de marzo de 2001. ■ Ante esta situación, es menester que el TPI determine con exactitud la fecha en que Fermín Carcaño comenzó a ejercer las funciones de "*Sous Chef*" y, por consiguiente, se convirtió en un empleado exento.

En el caso de autos surge —tanto de los testimonios de los testigos que declararon en la vista como de la prueba documental— que durante el tiempo que Fermín Carcaño estuvo trabajando para Zabó, éste ocupó varias posiciones, recibió varios ascensos y aumentos de sueldo. El expediente ante nos refleja que Fermín Carcaño comenzó a laborar en Zabó el 2 de agosto de 1995 como "*entry level line cook*" con un salario por hora de $4.25 y que sus responsabilidades fueron aumentando paulatinamente hasta llegar a ocupar un puesto como asistente de cocina —también conocido como "*Sous Chef*"—, posición que ostentaba a la fecha de cesar sus labores en el restaurante. Surge del expediente que como "*Sous Chef*" a tiempo completo, Fermín Carcaño devengaba un salario de $925 quincenales.

Según se desprende de los hechos del caso, la relación laboral entre las partes de este caso tuvo, por así decirlo, dos etapas. La primera etapa, transcurre del 2 de agosto de 1995, cuando Fermín Carcaño fue contratado como "*entry level cook*", hasta la fecha —a ser determinada por el TPI— en que comenzó a realizar labores como "*Sous Chef*". Como "*entry level cook*", Fermín Carcaño era responsable de preparar emparedados y aperitivos fríos, además, de 10 platos del menú. ■ No realizaba trabajos de oficina que no fueran de naturaleza manual, ni tenía empleados a su cargo o control de los gastos del restaurante, ni ejercía ningún tipo de discreción o juicio independiente como parte de sus funciones.

En vista de esto, resolvemos que en esta primera etapa de la relación laboral, como empleado regular, Fermín Carcaño tiene derecho a que se le paguen todas las horas trabajadas, de haber algunas, durante su período de almuerzo, asímismo las trabajadas en exceso del máximo de horas de labor al día o a la semana que la Junta de Salario Mínimo haya fijado o fijare para la ocupación, negocio o industria en cuestión. Por tanto, es necesario que el tribunal a *quo*, primeramente, determine la fecha exacta en que el apelante pasó a ser empleado exento del restaurante. Una vez determinada dicha fecha, deberá realizar el cálculo de la cantidad exacta adeudada a Fermín Carcaño por concepto de horas extras y horas trabajadas en el período de tomar alimentos durante el período anterior a dicha fecha.

La segunda etapa de la relación laboral entre Zabó y Fermín Carcaño, transcurre desde la fecha en que éste comenzó a trabajar como "*Sous Chef*" —la cual será determinada por el TPI— hasta que finalizaron sus labores en Zabó, el 22 de enero de 2002. Durante este período, Fermín Carcaño se desempeñó como un empleado exento, por lo que no tendría derecho al pago de horas trabajadas durante el período de tomar alimentos ni en exceso de la jornada laboral. Por tanto, concluimos que el tercer error fue cometido por el tribunal a *quo*.

Así pues, remitimos el caso al foro apelado para que determine, además, —conforme a lo dispuesto en esta sentencia—, la cantidad de horas extras y horas de alimento que Carcaño trabajó semanalmente durante el período que se desempeñó como "*entry level cook*" en el Restaurante Zabó. Además, deberá calcular la compensación a la cual tiene derecho el apelante por concepto de dichas horas. Esto, tomando como base los aumentos de salarios que éste recibió durante el transcurso del tiempo que trabajó para la parte apelada, según

fue discutido anteriormente.

En su quinto señalamiento de error, el apelante alega que erró el TPI al desestimar todo lo relacionado con la alegación de discrimen por razón de origen, cuando existía una presunción establecida por la Ley 100 del 30 de junio de 1959, 29 L.P.R.A. sec. 54, y por la jurisprudencia, la cual no fue rebatida por el patrono. No le asiste la razón. Veamos.

La alegación de discrimen por razón de origen levantada por el apelante en su querella no encuentra apoyo en el expediente ante nos. La prueba presentada durante la vista demuestra todo lo contrario. En particular, del testimonio del señor Carrroll —no controvertido por el apelante—, surge que Zabó tenía conocimiento del origen nacional del apelante al momento de su contratación en el 1995, pues, junto con su solicitud, éste proveyó copia de su licencia de conducir y la tarjeta de *"resident alien"*. ■■■ Por otro lado, es un hecho incontrovertido que mientras laboró para Zabó, Fermín Carcaño recibió varios aumentos salariales y fue objeto de varios ascensos hasta llegar a ocupar la posición de *"Sous Chef"*. Más aún, la evidencia revela que el apelante era considerado como un empleado de confianza, el cual tenía una posición de autoridad y respeto entre los empleados a su cargo, además de que contaba con la entera confianza del señor Carroll. Tanto es así, que se le entregaron las llaves del restaurante para que éste se encargara de abrirlo. A su vez, surge de la prueba que cuando el *restaurante cerró sus operaciones durante el horario de almuerzo*, al apelante no se le despidió ni se le redujeron sus horas de trabajo, sino que se le mantuvo en su posición en consideración a los años que éste llevaba trabajando con Zabó y debido a la confianza que su patrono le tenía.■■■ Esta no es precisamente la conducta que exhibiría un patrono que discrimina contra un empleado.

El expediente del caso se encuentra huérfano de evidencia que sustente la alegación del apelante de que su despido se debió a un discrimen por razón de origen nacional. El que se haya determinado que el despido del apelante fue injustificado no quiere decir que el patrono hubiera discriminado contra él. En resumen, de la transcripción de la vista en su fondo no surge que Fermín Carcaño presentara evidencia alguna que sustentara su reclamación de discrimen por razón de origen por parte de su patrono. Por consiguiente, concluimos que el quinto señalamiento de error no fue cometido.

## V

Por los fundamentos antes expuestos, modificamos la sentencia apelada, a los efectos de que el Tribunal de Primera Instancia determine la fecha exacta en que el señor Fermín Carcaño pasó a ser empleado exento del Restaurante Zabó. Una vez determinada dicha fecha, deberá realizar el cálculo de la cantidad exacta que se le adeudada por concepto de horas trabajadas en el período de tomar alimentos y horas extras en exceso de la jornada laboral, durante el período en que éste se desempeñó como empleado regular, de haber alguna. Además, deberá realizar el cómputo de la mesada correspondiente, conforme lo establece la Ley 80, *supra*, y la cantidad que procede por concepto de honorarios de abogado. Así modificada, se confirma.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones

### ESCOLIOS 2006 DTA 81

**1.** Testimonio de la Sra. Yasmar Martínez Montalvo, Gerente de Recursos Humanos, transcripción de la prueba oral, pág. 22, líneas 8-12. Testimonio del Sr. Carroll, transcripción de la prueba oral, pág. 67, líneas 19-20.

**2.** Testimonio del Sr. Carroll, transcripción de la prueba oral, pág. 62, líneas 21-24 y pág. 67, líneas 1-5.

**3.** *Id.*, pág. 67, líneas 1-5.

**4.** *Id.*, pág. 67, líneas 23-25; pág. 70, líneas 4-16 y pág. 69, líneas 18-19.

**5.** *Id.*, pág. 67, líneas 19-25; pág. 68, líneas 1-2 y pág. 71, líneas 17-19.

**6.** *Id.*, pág. 68, líneas 1-6.

**7.** *Id.*, pág. 68, líneas 7-9 y 21-22.

**8.** *Id.*, pág. 69, líneas 1-3 y pág. 22, líneas 8-11.

**9.** *Id.*, pág. 69, líneas 4-8.

**10.** *Id.*, pág. 69, líneas 2-16.

**11.** *Id*, pág. 84, líneas 19-21

**12.** Dicha página fue omitida en el apéndice, por lo que tuvimos que solicitar copia al Tribunal de Primera Instancia.

**13.** Página 20 del alegato de la parte apelada.

**14.** Transcripción de la prueba oral, pág. 66, líneas 6-21.

**15.** Transcripción de la prueba oral, pág. 58, líneas 20-25 y pág. 59, líneas 1-22.

**16.** Transcripción de la prueba oral, página 58, líneas 6-11.

**17.** *Id.*, pág. 73, líneas 21-25 y pág. 74, líneas 1-3.